# United States Court of Appeals for the Federal Circuit

---

**SEH AHN LEE, IRINA RYAN, AHMAD NARIMAN, MARK PEACH,**
*Plaintiffs-Appellants*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

---

2017-1643

---

Appeal from the United States Court of Federal Claims in No. 1:15-cv-01555-CFL, Judge Charles F. Lettow.

---

Decided: July 13, 2018

---

DAVID LEO ENGELHARDT, Themis, PLLC, Washington, DC, argued for plaintiffs-appellants. Also represented by JOHN PIERCE, MICHAEL CONE.

HILLARY STERN, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for defendant-appellee. Also represented by CHAD A. READLER, ROBERT E. KIRSCHMAN, JR., REGINALD T. BLADES, JR.

---

Before REYNA, BRYSON, and STOLL, *Circuit Judges.*

BRYSON, *Circuit Judge.*

Plaintiffs Seh Ahn Lee, Irina Ryan, Ahmad Nariman, and Mark Peach each entered into agreements to provide services to Voice of America ("VOA"), a U.S. government-funded broadcast service. The agreements were in the form of a series of individual purchase order vendor ("POV") contracts that each plaintiff entered into over several years with the Broadcasting Board of Governors ("BBG"), which oversees VOA.

Unhappy with the terms of their contracts, the plaintiffs filed a class action complaint alleging that, along with other individuals who have served as independent contractors for VOA, they should have been retained through personal services contracts or appointed to positions in the civil service. If their contracts had been classified as personal services contracts or they had been appointed to civil service positions, the plaintiffs alleged, they would have enjoyed enhanced compensation and benefits. The Court of Federal Claims ("the Claims Court") dismissed the plaintiffs' first amended complaint, and subsequently denied their request for leave to file a proposed second amended complaint.

On appeal, the plaintiffs raise several contract-based claims, seeking damages for the loss of the additional compensation and benefits to which they contend they were entitled. We agree with the trial court that the plaintiffs have set forth no viable theory of recovery. We therefore affirm.

I

In 2014, the Office of Inspector General for the U.S. Department of State and the BBG ("OIG") issued a report that was critical of the BBG's use of POV contracts, concluding that the BBG was using such contracts in some cases to obtain personal services. The following

year, the plaintiffs brought this action in the Claims Court, contending that it was improper for the BBG to obtain their services through POV contracts, and that they were entitled to be treated as federal employees, with all of the pay and benefits applicable to such employees. As relevant to this appeal, the plaintiffs sought damages based on three theories: breach of express contract, breach of implied-in-fact contract, and *quantum meruit*.[1]

The Claims Court granted the government's motion to dismiss the plaintiffs' first amended complaint. First, the court noted that the plaintiffs' breach of contract claim was "not based on an entitlement to money damages under these express contracts," but instead was based on an implied contract theory under which they alleged they were entitled to additional pay and benefits. *Lee v. United States* ("*Lee I*"), 127 Fed. Cl. 734, 744–45 (2016). The court next held that the plaintiffs "failed to make a non-frivolous claim of an implied-in-fact contract with the government above and beyond the provisions of their express contracts." *Id.* at 745. Finally, the court noted that it "generally does not have jurisdiction over *quantum meruit* or implied-in-law contract claims." *Id.* The court recognized that an exception to that general rule applies, and that recovery under a *quantum meruit* measure of damages is available, when a contractor provides goods or services in good faith under an express contract that is later rescinded for invalidity. *Id.* at 745–46 (citing *Int'l Data Prods. Corp. v. United States*, 492 F.3d 1317, 1325

---

[1]    Initially, the plaintiffs also sought relief under the Back Pay Act, 5 U.S.C. § 5596. The trial court dismissed that claim for lack of jurisdiction because the plaintiffs failed to non-frivolously allege that they were "employees" within the meaning of the Back Pay Act. The plaintiffs have not pressed that claim on appeal.

(Fed. Cir. 2007), and *United States v. Amdahl Corp.*, 786 F.2d 387, 393 (Fed. Cir. 1986)).  Finding that the express contracts at issue in this case were not invalid, the court held that the exception did not apply to this case and that the court lacked jurisdiction over the plaintiffs' *quantum meruit* claim.  *Id.* at 746.

The plaintiffs filed a motion for reconsideration and sought leave to file a proposed second amended complaint. The court denied the motion, holding that the proposed amendments were futile.  *Lee v. United States* ("*Lee II*"), 130 Fed. Cl. 243, 248, 252–53 (2017).  The court first held that the proposed second amended complaint failed to state a claim for breach of express contract because the allegations in the complaint did not plausibly allege a breach of the POV contracts with the plaintiffs.[2]  *Id.* at 256.  With regard to the implied-in-fact contract theory, the court held that the plaintiffs had not sufficiently alleged a basis for finding that their express contracts were void or that an implied-in-fact contract existed apart from their express contracts.  The court therefore dismissed the plaintiffs' implied-in-fact contract theory.  *Id.* at 256–59.  Finally, the court dismissed the amended *quantum meruit* claim because the complaint again failed

---

[2]    In making that determination, the court referred to representative contracts between the BBG and three of the plaintiffs that were attached to the proposed second amended complaint.  *See Lee II*, 130 Fed. Cl. at 254–55. All of those contracts contain similar language defining the role of the plaintiffs as contractors providing non-personal services.  *Id.* at 255.  The attachments did not include a contract between the BBG and plaintiff Ahmad Nariman, but the plaintiffs have not suggested that the contractual language applicable to Mr. Nariman differed materially from the standard language contained in all of the other representative contracts.

to plausibly allege that the plaintiffs' express contracts were void or that the plaintiffs had not been paid the contract rate in full. *Id.* at 259–60.

The plaintiffs appeal both decisions.

## II

With regard to their claim for breach of express contract, the plaintiffs argue that the trial court erred (1) in dismissing the claim for breach of express contract set forth in their first amended complaint, and (2) in denying leave to amend with respect to the claim of breach of express contract set forth in their proposed second amended complaint.

## A

In support of the breach of express contract theory presented in their first amended complaint, the plaintiffs argue on appeal that the scope of their work was "materially limited" by the use of terms such as "independent contracting" and "non-personal services" in their contracts. According to the plaintiffs, the BBG "breached these limits" in its administration of the contracts.

The first amended complaint, however, did not allege that the breaches of the plaintiffs' contracts consisted of requiring them to provide personal services outside the terms of the contracts. Instead, the complaint focused on the failure to compensate them as if they were either federal employees or had been retained under personal services contracts.[3] It alleged that the BBG breached its

---

[3] The BBG has been authorized by Congress to award up to 60 "personal services contracts" to obtain services from personal services contractors. *See* 22 U.S.C.A. § 6206 note. None of the plaintiffs worked under contracts that were designated as personal services

contractual obligation to compensate them "as providers of personal services working in the manner of federal employees." For relief, the complaint demanded "back pay for the wrongfully withheld benefits, tax payments, and wages and salaries . . . as damages for breach of their express or implied contracts for the provision of personal services."

In asserting that the breach of their contract rights consisted of the failure to compensate them for providing personal services, the plaintiffs ignored the fact that their contracts specifically designated them as independent contractors who were not providing personal services and set forth their compensation accordingly. For that reason, the trial court properly concluded that the BBG did not breach any contractual obligations with respect to the plaintiffs' compensation, and that the alleged contract breaches were necessarily based on an implied contract to provide (and be compensated for) personal services, rather than on their express contracts.[4] The Claims Court

---

contracts; rather, the plaintiffs' contracts specifically stated that they were not providing personal services.

[4] In a hearing on the government's motion to dismiss, the plaintiffs twice conceded that the first amended complaint did not assert a viable claim for breach of express contract. First, the court asked: "But they don't really allege that the contracts or the express contracts that they have with the BBG or now, a couple of them indirectly with another contracting agency, are breached. They allege that there should have been accompaniments or implied terms, correct?" The plaintiffs' counsel replied "That's correct, Your Honor." *Lee v. United States*, No. 15-cv-1555 (Fed. Cl. Aug. 24, 2016), Dkt. No. 26, at 9–10. Later, the court inquired: "Well, let's talk about express contracts, because the Court didn't read the allegation saying – in the complaint as saying, we were not paid X

therefore properly dismissed the allegations of breach of express contract contained in Count II of the first amended complaint.

B

The plaintiffs next argue that the trial court erred in concluding that the proposed second amended complaint failed to state a claim for breach of express contract, and that the proposed amendments were therefore futile.

The proposed second amended complaint took a different approach to the claim of express contract breach. Instead of asserting that the contracts required the plaintiffs to perform personal services for which they were not properly compensated, the proposed second amended complaint alleged that their contracts were "for providing non-personal services as independent contractors" and therefore gave them certain rights to a "particular manner of performance and a specifically limited scope of work." The complaint alleged that the plaintiffs' "express contracts promised to allow them to serve as independent contractors, with a scope of work that was limited to 'non-personal' services."

The complaint alleged that independent contractors normally have a "high degree of independence in choosing the time, place, and manner of service," and have the right "to work independently of the client's direct supervision, and to keep charge of their own schedules." The BBG breached the express contracts, according to the complaint, by denying the plaintiffs

---

amount to which we were entitled as a result of our contract." The plaintiffs' counsel agreed: "That's correct. But the contracts, since they are, in fact, for personal services, should have at least implied terms of greater compensation." *Id.* at 27.

virtually every material right and benefit of being an independent contractor. They were not allowed to work from their own, preferred locations, as independent contractors do, but were forced to report to a federal office chosen by the BBG. They did not use, and were not allowed to use, their own equipment; to set their own hours; to work without direct federal supervision; or to work on projects for other clients to break up their day or expand their business.

To determine the scope of the plaintiffs' rights under their express contracts, the trial court reviewed the representative contracts that were attached to the proposed second amended complaint. The court concluded that "the plain language of the contracts that have been provided contradicts plaintiffs' allegations that they were entitled to certain 'rights and benefits' as independent contractors with the Broadcasting Board." *Lee II*, 130 Fed. Cl. at 254–55. The court observed that the contracts required the plaintiffs to perform their services on-site using government equipment; that the plaintiffs would be subject to regular review of their work and would be required to "comply with [the] general direction of the Contracting Officer"; and that the government had the "right and obligation to inspect, accept, or reject the work." *Id.* at 255.

The trial court noted that the proposed second amended complaint recited "only general allegations of direct supervision," and that those allegations were insufficient to "plausibly allege[] that the Board's supervision of plaintiffs was so pervasive and extensive as to constitute direction, supervision, or control" in breach of the express contract terms. *Id.* at 256. Rather, the court concluded, the allegations fell "within the scope of review and compliance commensurate with the government's right and obligation to inspect and accept or reject con-

tractors' work in accord with the contractors' provision of nonpersonal services." *Id.*

We discern no error in the trial court's assessment of the proposed second amended complaint and the language of the plaintiffs' express contracts. On appeal, the plaintiffs fail to identify any specific provision of the representative contracts that was breached; instead, they rely on general allegations regarding the rights normally enjoyed by independent contractors. Those allegations, however, are not tied to the rights and obligations of the parties defined by the contracts and therefore fail to state a claim of express contract breach.

For example, the plaintiffs assert that the complaint alleged that the government "'supervised,' and not merely 'inspected'" their work. However, the corresponding allegations in the complaint are conclusory in nature and are not tied to any specific provision of the contracts that limits the manner in which the government was entitled to review the contractors' work.

Similarly, the plaintiffs' argument that the government breached the contracts by requiring the plaintiffs to "provide services that were integral to its governmental mission" and to perform "services of the type performed by federal employees" is general in nature and is not based on any particular provision in the contracts. The plaintiffs' only allegation on that score is that "[i]ndependent contracts do not allow for such work, according to provisions of the [Federal Acquisition Regulation ("FAR")], 48 C.F.R. § 37.104." That allegation, however, is directed to the requirements of the regulation, not the provisions of the plaintiffs' contracts. The proposed second amended complaint contains no allegation that any provision in the plaintiffs' express contracts specifically prohibited such arrangements or that the government breached any such provision in the course of administering the contracts. Accordingly, the Claims Court correctly held that the

proposed second amended complaint failed to set forth a cognizable theory of breach of express contract.

## III

In their first amended complaint, the plaintiffs alleged as part of their overall breach of contract claim that they "served under implied-in-fact contracts" and that the BBG was liable to them "under the implied-in-fact contract theory of *quantum meruit* for the value of the personal services" they provided, together with their "costs of performance and a reasonable profit."

In the proposed second amended complaint, the plaintiffs set out their breach of implied contract and *quantum meruit* theories as separate claims. They alleged that the contracts "violated a legal prohibition on acquiring personal services by contract," and that the contracts were therefore void or voidable. Under their implied-in-fact theory of relief, the plaintiffs alleged that in place of the void contracts the court should provide implied terms, including a term that would compensate them "for the fair market value of their services." Under their *quantum meruit* theory, the plaintiffs again alleged that their contracts were void or voidable and that they were "entitled to recover on a *quantum meruit* basis for the value of their services." The plaintiffs also alleged that at various points one of the plaintiffs' contracts would lapse before a subsequent contract was executed, and that the plaintiffs should be compensated under an implied-in-fact contract theory or in *quantum meruit* for services they provided during those gap periods between contracts.

The trial court determined that the plaintiffs' implied contract and *quantum meruit* claims could not survive a motion to dismiss. In reaching that conclusion, the court ruled that the express contracts between the parties were not void, and that the terms of the express contracts covered the same subject matter as the alleged implied-in-fact contracts. The court therefore concluded that the

respective rights of the parties were defined not by any implied-in-fact contracts or the principles of *quantum meruit*, but by the terms of their express contracts. *Lee I*, 127 Fed. Cl. at 744–46; *Lee II*, 130 Fed. Cl. at 256–60. As for the gap periods between the express contracts, the court held, based on the course of dealing between the parties, that the terms of the express contracts continued to control during those periods. *Lee II*, 130 Fed. Cl. at 259.

## A

It is well settled that "the existence of an express contract precludes the existence of an implied-in-fact contract dealing with the same subject matter, unless the implied contract is entirely unrelated to the express contract." *Bank of Guam v. United States*, 578 F.3d 1318, 1329 (Fed. Cir. 2009) (quoting *Schism v. United States*, 316 F.3d 1259, 1278 (Fed. Cir. 2002) (en banc)); *Algonac Mfg. Co. v. United States*, 428 F.2d 1241, 1255 (Ct. Cl. 1970) ("[A]s a general rule, there can be no implied contract where there is an express contract between the parties covering the same subject.").

We find no error in the trial court's determination that the alleged implied-in-fact contracts do not deal with subject matter that is separate from and unrelated to the valid express contracts. *See Lee I*, 127 Fed. Cl. at 745; *Lee II*, 130 Fed. Cl. at 258. Because the plaintiffs had express contracts with the government to provide the services they rendered, and because the plaintiffs have not alleged that they performed additional work "entirely unrelated" to their express contracts, there is no force to their theory that they had implied-in-fact contracts to perform the same work that was the subject of their express POV

contracts.[5]    Accordingly, in order to prevail on their implied-in-fact contract claim, the plaintiffs must show that their express contracts were void.

The plaintiffs insist that their express contracts were illegal because they were contracts to provide personal services, in violation of FAR § 37.104. The trial court rejected that argument, and we concur in the court's ruling.

Section 37.104 of the FAR defines a personal services contract as a contract that is "characterized by the employer-employee relationship it creates between the Government and the contractor's personnel." 48 C.F.R. § 37.104(a). It directs that the agency "shall not award personal services contracts unless specifically authorized by statute." *Id.* § 37.104(b). The regulation provides that an employer-employee relationship under a service contract occurs when, as a result of the contract's terms or "the manner of its administration during performance, contractor personnel are subject to the relatively continuous supervision and control of a Government officer or employee." *Id.* § 37.104(c)(1). The regulation also supplies a set of "descriptive elements" that "should be used as a guide in assessing whether or not a proposed contract is personal in nature." *Id.* § 37.104(d). Those elements

---

[5] The plaintiffs argue in passing that they performed additional work that went beyond what was contemplated in their express contracts, and that the extra-contractual work "open[s] the door to implied terms." Their contention—that they performed additional work because they provided personal services rather than contract services—does not constitute a claim that the work they performed under their claimed implied contracts was "entirely unrelated to the express contract[s]"; to the contrary, the subject matter of the express contracts and the alleged implied contracts was the same.

include whether the contract is to be performed on site, whether the principal tools and equipment are furnished by the government, whether the services are "applied directly to the integral effort of agencies," whether comparable services in the same or similar agencies are performed by civil service personnel, whether the need for the services can be expected to last for more than one year, and whether the inherent nature of the service or the manner in which it is provided reasonably require government direction or supervision. *Id.*

As indicated by the regulation, the principal ground on which a contract will be found to be a personal services contract—and the principal ground that the plaintiffs invoke in challenging the validity of the contracts—is the degree of supervision to which the contracting employees were subject under the contract. *Id.* § 37.104(c)(2). According to the plaintiffs, they were subject to close supervision by government employees under their POV contracts, and their contracts were therefore invalid under the regulation.

The contracts, however, did not by their terms provide for close government supervision of the plaintiffs. To the contrary, the representative contracts that were attached to the complaint provided that the contractors

> [s]hall be responsible for their own management and administration of the work required and bear sole responsibility for complying with any and all technical, schedule, or financial requirements or constraints attendant to the performance of this contract; . . . [s]hall be free from supervision or control by any Government employee with respect to the manner or method of performance of the services specified; but . . . [s]hall, pursuant to the Government's right and obligation to inspect, accept, or reject the work, comply with such general direction of the Contracting Officer or the duly

Authorized Representative of the Contracting Of-
ficer (AR/CO) as is necessary to ensure accom-
plishment of the contract objectives.

While the plaintiffs complain that the nature and
degree of supervision to which they were actually subject-
ed exceeded what was provided for in the contracts, that
contention goes to whether the express contracts were
breached, not to whether those contracts were valid. The
plaintiffs have failed to show that the POV contracts, by
their terms, provided for direct government supervision to
a degree that rendered them personal services contracts
that were invalid under FAR § 37.104.

In further support of their contention that their POV
contracts were invalid, the plaintiffs also focus on the
requirements that they work at government-designated
sites and that they use government-supplied equipment.
While in some instances those factors can be relevant to
the question whether a person who is retained to perform
particular tasks is doing so in the capacity of an employee
or an independent contractor, they are far from definitive.
A contractor who is retained, for example, to repair a
building will obviously be working at the site designated
by the retaining party. And a contractor who is retained,
for example, to drive a new vehicle from the manufactur-
ing plant to the dealer's location will obviously be using
the retaining party's equipment to perform the contract.
In neither of those cases, however, will those factors be
sufficient to convert the contractor into an employee. The
plaintiffs' general allegations that their contracts provid-
ed for the use of government-supplied equipment at a
government-designated site are likewise insufficient to

support their contention that the POV contracts were invalid.[6]

Moreover, section 37.104 of the FAR does not dictate that an executed contract will be deemed void simply because it is later determined that the degree of government supervision or other factors make the role of the contracting party more like that of an employee than an independent contractor. The fact that a contract may be inconsistent with a statutory or regulatory requirement does not *ipso facto* render the contract void. To the contrary, "[i]nvalidation of the contract is not a necessary consequence when a statute or regulation has been contravened, but must be considered in light of the statutory or regulatory purpose, with recognition of the strong policy of supporting the integrity of contracts made by and with the United States." *Am. Tel. & Tel. Co. v. United States*, 177 F.3d 1368, 1374 (Fed. Cir. 1999) (en banc). If a statute "does not specifically provide for the invalidation of contracts which are made in violation of [its provisions]," the proper inquiry is "whether the sanction of nonenforcement is consistent with and essential to effectuating the public policy embodied in [the statute]." *Id.*

---

[6]   The plaintiffs contend that the BBG ultimately admitted that it was improperly using POV contractors to perform personal services. In fact, the BBG did not make any such admission; to the contrary, it has consistently contended that its POV contractors were not performing personal services. The asserted admission was by the OIG, which is a separate entity from the BBG. For its part, the BBG responded to the OIG's report by acknowledging that it is not permitted to employ personal services contractors in excess of those authorized by statute, but insisting that "its use of independent contractors [was] consistent with the FAR."

(alterations in original) (quoting *United States v. Miss. Valley Generating Co.*, 364 U.S. 520, 563 (1961)).

It does not appear that refusal to enforce the contracts at issue in this case would be "consistent with and essential to effectuating" the public policies promoted by the regulation on which the plaintiffs rely. As the trial court observed, when Congress authorized the BBG to award up to 60 personal services contracts to obtain personal services for the agency, it recognized the need to "provide greater flexibility to the Board in its employment practices" and to "enhance the agency's responsiveness to crises and support existing broadcasts." H.R. Rep. No. 107-57, at 75 (2001); *see Lee II*, 130 Fed. Cl. at 257. Congress's recognition of the BBG's need for flexibility in obtaining the variety of services used in performing its mission would be inconsistent with the invalidation of particular contracts *ab initio* if the administration of the contract were later determined to cross the often fuzzy line between independent contracting and employment.

Because of the disruptive effect of retroactively invalidating a government contract, this court has held that "invalidation of a contract after it has been fully performed is not favored." *Am. Tel. & Tel. Co.*, 177 F.3d at 1375. As the trial court noted, the plaintiffs have each contracted with the government over several years, through multiple contracts and contract renewals, most (if not all) of which have been fully performed and fully paid at the contract rate. *Lee II*, 130 Fed. Cl. at 257–58. This factor, too, weighs against invalidation of the plaintiffs' express contracts and precludes recovery under an implied-in-fact contract theory.[7]

---

[7] According to the allegations in the complaints, plaintiff Nariman is no longer providing services to the BBG, and plaintiffs Lee and Ryan are no longer working

In pressing their implied-in-fact contract theory, the plaintiffs rely heavily on this court's decision in *Barrett Refining Corp. v. United States*, 242 F.3d 1055 (Fed. Cir. 2001). In *Barrett*, the plaintiff performed the contract and sought payment based in part on the price adjustment clause of the contract. However, the Claims Court, in an unrelated action, had held that the price adjustment clause was unenforceable. Because the contract no longer contained a valid clause covering price escalation, the court could not grant Barrett relief based on the original contract language. *Id.* at 1058. Nonetheless, the court held that Barrett was entitled to an award of damages, finding an implied-in-fact agreement between the parties as to the voided price adjustment clause. Based on that implied-in-fact agreement, the court awarded Barrett the "fair market valuation" of the goods it provided to the government. This court affirmed. *Id.* at 1060–61.

The *Barrett* case differs from this one in an important respect. The voiding of the contract clause at issue in *Barrett* deprived the plaintiff of the benefits for which it had bargained. Because the court concluded that the parties had not intended for the plaintiff to be left without a remedy, the court found that the plaintiff was entitled to recover under an implied-in-fact contract theory. *See* 242 F.3d at 1060 (finding implied-in-fact contract where "the government intended to pay at least fair market value" and in light of "the undisputed performance of the contract by both parties"). In this case, by contrast, the plaintiffs have not been deprived of any rights granted to

---

under POV contracts, but are instead working under subcontracts with staffing agencies that have contracts with the BBG. The complaint alleges that plaintiff Peach is the only one of the four named plaintiffs who was still providing services under independent contracts as of the date of the proposed second amended complaint.

them under their contracts. Instead, their allegation is that they were entitled to benefits beyond those specifically provided by their contracts.

In *Barrett*, it was necessary to recognize an implied-in-fact contract in order to avoid depriving the plaintiffs of their rights under a contract that was voided through no fault of their own. In this case, the plaintiffs are seeking to improve on the rights granted to them under their contracts by voiding the contracts and recovering greater benefits than were available under the contracts. *Barrett* therefore provides no support for the plaintiffs' claim of liability under an implied-in-fact contract theory.

Finally, with regard to the plaintiffs' implied-in-fact contract claim as to the occasional gaps between contract periods, we agree with the trial court that when parties continue performance after a contract expires, the court may infer that the parties intended to renew the contract under the same terms for a similar period of time. Because, as the court noted, the terms of the plaintiffs' contracts did not appear to change materially from period to period, we agree with the court that it was proper to look to the express contracts to supply the terms that would govern during the gap periods. *See Lee II*, 130 Fed. Cl. at 259.

B

The plaintiffs separately allege that they are entitled to relief under a *quantum meruit* theory. It appears, however, that the plaintiffs' *quantum meruit* theory is in essence the same as their implied-in-fact contract theory.

Recovery in *quantum meruit* is typically "based on an implied-in-law contract." *Int'l Data Prods. Corp.*, 492 F.3d at 1325. Because the jurisdiction of the Claims Court over contract claims "extends only to contracts either express or implied in fact, and not to claims on contracts implied in law," *Perri v. United States*, 340 F.3d

1337, 1343 (Fed. Cir. 2003) (quoting *Hercules, Inc. v. United States*, 516 U.S. 417, 423 (1996)), that court ordinarily does not entertain *quantum meruit* claims. However, we have on occasion approved the use of *quantum meruit* or *quantum valebant* as a measure of damages for breach of an implied-in-fact contract. *See Amdahl Corp.*, 786 F.2d at 393; *Barrett*, 242 F.3d at 1059–61.

In the *Amdahl* case, the government received goods, but the contract under which it received them was ruled void due to statutory and regulatory violations in the procurement process. We held that, where a contractor has conferred a benefit on the government, the contractor "may recover at least on a *quantum valebant* or *quantum meruit* basis for the value of the conforming goods or services received by the government prior to the rescission of the contract for invalidity." *Amdahl Corp.*, 786 F.2d at 393 (footnote omitted). The court held that the contractor was not "compensated *under* the [express] contract, but rather under an implied-in-fact contract." *Id.*

Because the plaintiffs seek to model their *quantum meruit* theory of relief on the *Amdahl* case, we treat their argument as being based on an implied-in-fact contract theory over which the Claims Court has jurisdiction. As indicated above, however, the plaintiffs' implied-in-fact contract theory cannot survive a motion to dismiss for failure to state a claim on which relief can be granted. The assertion of *quantum meruit* as a basis for calculating damages cannot rescue an implied-in-fact theory of recovery that is otherwise not cognizable. The trial court therefore properly dismissed the plaintiffs' *quantum meruit* claim as well.

## AFFIRMED