# United States Court of Appeals for the Federal Circuit

---

**MICHAEL HORVATH, INDIVIDUALLY, AND ON BEHALF OF THE CLASSES OF FEDERAL SECRET SERVICE AGENTS SIMILARLY SITUATED TO HIM,**
*Plaintiff-Appellant*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

---

2017-1801

---

Appeal from the United States Court of Federal Claims in No. 1:16-cv-00688-LKG, Judge Lydia Kay Griggsby.

---

Decided: July 20, 2018

---

NICHOLAS WIECZOREK, Clark Hill PLLC, Las Vegas, NV, argued for plaintiff-appellant. Also represented by DAVID JAMES VENDLER, Law Offices of David J. Vendler, San Marino, CA.

SOSUN BAE, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for defendant-appellee. Also represented

by CHAD A. READLER, ROBERT E. KIRSCHMAN, JR., CLAUDIA BURKE.

––––––––––––––––

Before DYK, CHEN, and STOLL, *Circuit Judges.*

DYK, *Circuit Judge.*

Michael Horvath brought this putative class-action lawsuit in the Court of Federal Claims ("Claims Court") seeking overtime and related compensation on behalf of himself and similarly situated special agents of the U.S. Secret Service. Among his theories of recovery, Mr. Horvath asserted that regulations promulgated by the Office of Personnel Management ("OPM") improperly required that certain overtime hours be worked consecutively in order to trigger compensation. *See* 5 C.F.R. §§ 550.111(f)(2)(ii), 550.182(b)(2). Because we find that those challenged regulations are contrary to the unambiguous meaning of the relevant statute, we reverse in part the Claims Court's dismissal of Mr. Horvath's complaint and remand for further proceedings. We affirm in all other respects.

## BACKGROUND

Mr. Horvath has been employed as a special agent of the Secret Service since 2010. As such, he is a law-enforcement officer entitled to certain enhancements to his pay to compensate for his availability and overtime hours.

First, Mr. Horvath receives a 25% enhancement to his base salary under a provision known as Law Enforcement Availability Pay or "LEAP." *See* 5 U.S.C. § 5545a(h)(1). The LEAP statute "provide[s] premium pay to criminal investigators to ensure the availability of criminal investigators for unscheduled duty in excess of a 40 hour work week based on the needs of the employing agency." *Id.* § 5545a(b). There is no dispute that Mr. Horvath is a

criminal investigator within the meaning of the LEAP statute, that he otherwise meets its eligibility requirements, and that he has accordingly been receiving LEAP pay.

Second, Mr. Horvath is additionally entitled to overtime compensation for some—but not all—of the overtime hours he works. For employees receiving LEAP pay, the overtime-pay statute makes an important distinction between unscheduled overtime and scheduled overtime (i.e., "overtime work which is scheduled in advance of the administrative workweek"). *Id.* § 5542(d)(1). For scheduled overtime, those employees are compensated for work which is:

> (A) in excess of 10 hours on a day during such investigator's basic 40 hour workweek; or

> (B) on a day outside such investigator's basic 40 hour workweek . . . .

*Id.* All other overtime—scheduled or unscheduled—is considered to be compensated by the LEAP pay enhancement rather than by additional hourly wages. *Id.* § 5542(d)(2).

However, there is an exception when performing certain duties, including the protective services performed by the Secret Service. *Id.* § 5542(e). For that kind of work, employees are compensated for all scheduled overtime, notwithstanding subsection (d)(1)'s limitations, "if the investigator performs, on that same day, at least 2 hours of overtime work not scheduled in advance of the administrative workweek." *Id.* OPM has promulgated regulations substantially restating this exception but adding one relevant detail: the exception applies only if "[t]he investigator performs on that same day at least 2 *consecutive* hours of overtime work that are not scheduled in advance of the administrative workweek and are compensated by availability pay." 5 C.F.R. § 550.111(f)(2)(ii) (emphasis

added); *accord id.* § 550.182(b)(2) (providing an exception if "the investigator performs 2 or more consecutive hours of unscheduled overtime work on that same day").

Mr. Horvath filed suit in the Claims Court on June 10, 2016, claiming that he is entitled to back pay on a variety of theories. The government moved to dismiss for want of subject-matter jurisdiction and for failure to state a claim. *See* RCFC 12(b)(1), (6). The Claims Court found that it lacked jurisdiction to consider some of Mr. Horvath's claims and that others, over which it had jurisdiction, failed to state a claim. *Horvath v. United States*, 130 Fed. Cl. 273, 281–86 (2017).

Mr. Horvath timely appealed. We have jurisdiction under 28 U.S.C. § 1295(a)(3).

DISCUSSION

We review de novo the Claims Court's dismissal both for want of subject-matter jurisdiction and for failure to state a claim. *E.g.*, *Abbas v. United States*, 842 F.3d 1371, 1375 (Fed. Cir. 2016).

I

We agree that dismissal was proper with respect to three of Mr. Horvath's four asserted claims.

First, Mr. Horvath alleged that the government implemented a so-called flexing policy, pursuant to which agents were required to substitute their regularly scheduled work days with days originally scheduled to be off, without additional compensation. The Claims Court determined it lacked subject-matter jurisdiction over this claim for want of a money-mandating statute. *Horvath*, 130 Fed. Cl. at 284. In particular, the Claims Court found that Mr. Horvath's complaint stated at most a violation of 5 U.S.C. § 6101, which sets forth the basic federal workweek. *Id.* We agree with the Claims Court. As we have since held in *Adams*, § 6101 is not money-mandating and

cannot support jurisdiction over a claim against the flexing policy. *Adams v. United States*, 860 F.3d 1379, 1380 (Fed. Cir. 2017). Like the employees in *Adams*, Mr. Horvath was not entitled to regular pay for hours not worked on the midweek flex day, nor was he entitled to overtime pay for the regular hours worked on the re-scheduled day. *Id.*[1]

Second, and relatedly, Mr. Horvath contends that when forced to work a flex day, he was granted a day off that could only be taken within the same pay period, in violation of regulations that allowed compensatory time off to be used for up to 26 pay periods. The Claims Court regarded this as a claim brought under 5 U.S.C. § 5543, which provides for compensatory time off, and determined that because § 5543 is discretionary, it is not money-mandating and could not confer jurisdiction. *Horvath*, 130 Fed. Cl. at 284–85. We agree: to the extent Mr. Horvath was even eligible for compensatory time off, § 5543 uses wholly discretionary language and is not money-mandating.

Finally, Mr. Horvath contends that he was improperly denied overtime compensation for two of the 12 hours he worked on the typical working day. Under this so-called 8-2-2 policy, agents are paid at regular rates for the first eight hours, are compensated by LEAP pay for the next two hours, and are paid at overtime rates for the final two hours. While Mr. Horvath claims that he was improperly denied overtime compensation for all the hours worked in

---

[1]    As Mr. Horvath concedes, the regulation on which he additionally relies, 5 C.F.R. § 610.121, cannot support Claims Court jurisdiction, *see United States v. Connolly*, 716 F.2d 882, 885 (Fed. Cir. 1983) (en banc) (observing that 28 U.S.C. § 1491(a)(1) jurisdiction may be predicated on regulations only if promulgated by an executive department).

excess of eight, this is precisely how the statute is written. The statute directs overtime compensation for scheduled work "in excess of 10 hours." 5 U.S.C. § 5542(d)(1)(A). And the statute provides that "investigator[s] shall be compensated for all other overtime work" by LEAP pay. *Id.* § 5542(d)(2). Given the plain language of the statute, the Claims Court properly found that Mr. Horvath had failed to state a plausible claim for relief under the 8-2-2 policy. *Horvath*, 130 Fed. Cl. at 283–84. Mr. Horvath's resort to the legislative history, which itself is inconclusive, cannot overcome the clear language of the statute. *See, e.g.*, *Res-Care, Inc. v. United States*, 735 F.3d 1384, 1389 (Fed. Cir. 2013).

## II

Mr. Horvath's final claim is that OPM's consecutive-hours requirement is contrary to the plain meaning of 5 U.S.C. § 5542(e), which he argues is triggered by any two hours of unscheduled overtime, whether consecutive or not. OPM regulations state that compensation under § 5542(e) is triggered only if "[t]he investigator performs on that same day at least 2 *consecutive* hours of overtime work that are not scheduled in advance of the administrative workweek and are compensated by availability pay." 5 C.F.R. § 550.111(f)(2)(ii) (emphasis added); *accord id.* § 550.182(b)(2). When OPM promulgated its regulations, it made no comment on the consecutive-hours requirement and provided no reasoning. *See* Pay Administration; Premium Pay, 64 Fed. Reg. 4517, 4517–19 (Jan. 29, 1999).

The government argues that "the statute is silent as to how the two hours should be calculated" and that OPM's regulations are a reasonable interpretation of the statute. Appellee Br. 17. The Claims Court agreed with the government, finding the statute silent on the matter and affording *Chevron* deference to the regulations. *Horvath*, 130 Fed. Cl. at 282–83.

We review Mr. Horvath's challenge to OPM's interpretation of the statute under the two-step analysis announced in *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842–45 (1984). First, we ask "whether Congress has directly spoken to the precise question at issue," *id.* at 842; if so, we "must give effect to the unambiguously expressed intent of Congress," *id.* at 843. If, however, "the statute is silent or ambiguous with respect to the specific issue," we ask whether the agency's interpretation "is based on a permissible construction of the statute." *Id.*

Thus, at the first step, the question is whether § 5542(e) is ambiguous or silent with respect to whether the required two hours must be consecutive. We agree with the government that looking at the text of the statute in isolation, it is silent in this respect. But "this does not lead us immediately to step two": instead, "we must first use all 'traditional tools of statutory construction' to determine whether 'Congress had an intention on the precise question at issue' before we consider deference to an agency interpretation." *Candle Corp. of Am. v. U.S. Int'l Trade Comm'n*, 374 F.3d 1087, 1093 (Fed. Cir. 2004) (quoting *Chevron*, 467 U.S. at 843 n.9); *accord Gen. Dynamics Land Sys., Inc. v. Cline*, 540 U.S. 581, 600 (2004) ("Even for an agency able to claim all the authority possible under *Chevron*, deference to its statutory interpretation is called for only when the devices of judicial construction have been tried and found to yield no clear sense of congressional intent."); *Star-Glo Assocs., LP v. United States*, 414 F.3d 1349, 1356 (Fed. Cir. 2005).

While the text of § 5542(e) is silent, the rest of § 5542 suggests that the consecutive-hours requirement is not appropriate. When the statute refers to periods of hours, it consistently does so in a manner that clearly refers to a cumulative tally of hours, which are not always consecutive. *See, e.g.*, 5 U.S.C. § 5542(a) (referring to overtime as "hours of work . . . in excess of 40 hours in an administra-

tive workweek"); *id.* § 5542(f)(1) (applying overtime rates to hours ordered or approved for firefighters "in excess of 106 hours in a biweekly pay period"); *id.* § 5542(g)(1)(A) (defining overtime for some border-patrol agents as "hours of work in excess of 100 hours during a 14-day biweekly pay period"); *id.* § 5542(g)(5)(A) (capping compensatory time off for border-patrol agents at "240 hours . . . during a leave year"). Importing the additional requirement that the hours be consecutive here "stretches, and in our view, distorts" the plain meaning of the statute. *Wetzler v. Fed. Deposit Ins. Corp. ex rel. Seamen's Bank for Sav. F.S.B.*, 38 F.3d 69, 74 (2d Cir. 1994).

Moreover, the consecutive-hours requirement is not consistent with the history and purpose of the statute. The LEAP statute was enacted in 1994 without the subsection (e) exception to the general rule that no additional hourly compensation is paid for the first two hours of scheduled overtime work performed by LEAP-compensated employees. *See* Law Enforcement Availability Pay Act of 1994, Pub. L. No. 103-329, sec. 633(c), § 5542(d), 108 Stat. 2425, 2426–27. One year later, Congress added subsection (e) as part of a larger package of appropriations. *See* Treasury, Postal Service, and General Government Appropriations Act, 1996, Pub. L. No. 104-52, sec. 531, § 5542(e), 109 Stat. 468, 496. This sequence of enactments indicates that subsection (e) was added to benefit investigators (including Secret Service agents) by increasing their pay for certain especially sensitive or demanding duties.

This aligns with the statute's purpose, as evidenced by the interplay between subsections (d) and (e). Subsection (d) provides that the first two hours of scheduled overtime are compensated by LEAP pay, but subsection (e) overrides that rule when an investigator also works two hours of unscheduled overtime. This is because, for those days, Congress concluded that the LEAP pay covers only two of the four hours in question (the unscheduled

overtime), leaving the scheduled overtime uncompensated. This history and purpose suggest to us that it was Congress's clear intent for the subsection (e) benefit to be triggered by any two hours of unscheduled overtime, without regard to whether they were performed consecutively.

At oral argument, the government for the first time asserted that the approach of the OPM regulation serves the statutory purpose of discouraging overtime abuse. *See* Oral Arg. 14:34–25:15. But the government has identified nothing in the structure, purpose, or history of the statute that suggests its purpose is abuse deterrence. And the government has offered no logical nexus between abuse and whether overtime hours are worked consecutively. *See id.* at 16:11–18:35.

At *Chevron*'s step one, using the traditional tools of statutory construction, we find that § 5542(e) unambiguously applies without regard to whether the two hours of unscheduled overtime are consecutive. We therefore need not reach step two.[2] With this understanding, we conclude that the Claims Court erred in dismissing Mr. Horvath's complaint for failure to state a claim concerning § 5542(e).

## CONCLUSION

With respect to Mr. Horvath's claim for overtime compensation denied under OPM's consecutive-hours requirement, we reverse the Claims Court's dismissal and remand for further proceedings. On remand, the Claims

---

[2] This is therefore not a case like *Doe*, in which we proceeded to step two in the face of statutory silence because "[t]here [wa]s no suggestion . . . that this ambiguity may be resolved by resort to . . . legislative history or by other traditional tools of statutory construction." *Doe v. United States*, 372 F.3d 1347, 1359 (Fed. Cir. 2004).

Court should consider whether class certification is appropriate in this action.  *See* RCFC 23.  As to the remaining claims, we affirm the dismissal.

### AFFIRMED IN PART, REVERSED IN PART, AND REMANDED

COSTS

Costs to Mr. Horvath.