NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

_____

**JOSEPH ANORUO,**
*Plaintiff-Appellant*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

_____

2018-1756

_____

Appeal from the United States Court of Federal Claims in No. 1:15-cv-00658-TCW, Judge Thomas C. Wheeler.

_____

Decided: February 7, 2019

_____

JOSEPH ANORUO, Las Vegas, NV, pro se.

JESSICA COLE, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant-appellee. Also represented by CLAUDIA BURKE, ROBERT EDWARD KIRSCHMAN, JR, JOSEPH H. HUNT.

_____

Before PROST, *Chief Judge,* NEWMAN and TARANTO, *Circuit Judges.*

PER CURIAM.

Dr. Joseph Anoruo, an employee of the Department of Veterans Affairs (VA), brought this action against the United States in the Court of Federal Claims.  He claimed that he was entitled to receive, but did not receive, student loan reimbursement payments under certain programs established by VA, namely, the Education Debt Reduction Program (EDRP) and the Student Loan Repayment Program (SLRP).  The Court of Federal Claims dismissed the complaint, concluding that his EDRP claims are time-barred and that his SLRP claims fail to state a claim upon which relief can be granted.  *Anoruo v. United States*, 136 Fed. Cl. 90, 95 (2018).  We affirm.

## I

### A

In May 2003, Dr. Anoruo took a temporary position as a clinical pharmacist in VA's Southern Nevada Healthcare System (VASNHS).  He became a permanent employee on October 8, 2003.

On February 16, 2004, Dr. Anoruo applied for student loan debt reduction payments under the EDRP, submitting an application to Donald Zurfluh, the chief of human resources for VASNHS.[1]  Not until more than three months later, however, on May 24, 2004, did the medical center director of VASNHS, John Bright, sign Dr. Anoruo's paperwork, and the application was forwarded to VA's national recruiting office on June 4, 2004.  The dates are significant because, under the version of the statute then in effect, eligibility for EDRP payments was limited to employees who had held their positions for less than six months, 38 U.S.C.

---

[1]    Under the EDRP, VA may make student loan reduction payments to employees in healthcare positions that VA deems difficult to fill.  *See* 38 U.S.C. § 7681(a).

§ 7682(a)(1), (c) (2002), and VA at that time required any employee's EDRP application to be signed by all necessary parties within six months after the employee received a permanent appointment. For Dr. Anoruo, six months from his permanent appointment was April 8, 2004. Dr. Anoruo submitted his application before that date, but Mr. Bright did not sign the application until after that date.

On May 25, 2004, Mr. Zurfluh informed Dr. Anoruo that his application had been denied "due to the fact that [he] exceeded the 6 month time limit for applying." S.A. 75.[2] The next day, Dr. Anoruo appealed the denial to the national office, contending that his application was timely submitted. On September 1, 2004, Mr. Zurfluh notified Dr. Anoruo that the national office had denied his appeal, again on the basis that his application was untimely.

Several years later, in November 2006, Dr. Anoruo requested that Mr. Bright independently review his EDRP application. Mr. Bright replied in January 2007 that local facilities in VA's healthcare system, such as VASNHS, had no authority or control over the EDRP program, so he could not issue a decision contrary to that of the national office. Then, in June 2008, Mr. Bright wrote to Dr. Anoruo that the national office had declined to reconsider its earlier denial but that he would like to meet with Dr. Anoruo to "discuss other options." S.A. 86. During this meeting, Dr. Anoruo alleges, Mr. Bright offered to pay him $40,000 out of local funds, and Dr. Anoruo accepted this offer.

In January 2009, Mr. Bright sent Dr. Anoruo a letter suggesting that he apply for student loan reimbursement

---

[2] Mr. Zurfluh's explanation for the denial was incorrect: he used the date of Dr. Anoruo's appointment to a temporary position, rather than the date his appointment became permanent, to calculate Dr. Anoruo's eligibility for the EDRP.

under the SLRP.[3]  Two months later, in March 2009, Mr. Bright informed Dr. Anoruo that he had "instructed Mr. Zurfluh to assist you in making application so I can fund locally." S.A. 94.  Dr. Anoruo met with Mr. Zurfluh in June 2009 and received a VASNHS proposal, which included an Employee Service Agreement under the SLRP offering to pay $13,300, Dr. Anoruo's outstanding student loan balance at that time, in exchange for committing to two years of service with VA.  Dr. Anoruo refused to sign the agreement because the amount was far less than the $40,000 that Mr. Bright allegedly offered him.

Dr. Anoruo continued to have discussions with officials from VASNHS and the national recruiting office during the next several years.  On July 21, 2011, he received a letter from Marisa Palkuti, the director of the national office, acknowledging that Dr. Anoruo's 2004 EDRP application had been denied because Mr. Bright had not signed and forwarded the application within the six-month eligibility window.  Ms. Palkuti offered no relief, however, explaining that "[t]his was then the standard of practice and untimely awards were not processed if they were submitted beyond the 6-month deadline." S.A. 115.  She also reiterated that the $13,300 offer was the maximum allowable amount under the SLRP and that "there is no statutory vehicle available to retroactively reimburse Dr. Anoruo for the student loan debt that has been retired." S.A. 116.

---

[3]    Under the SLRP, heads of federal agencies may establish programs to repay the student loans of their employees in order to help the agencies recruit and retain highly qualified personnel.  *See* 5 U.S.C. § 5379(b)(1).  By regulation, such payments are limited to the amount of the employee's outstanding student loan debts when the employee and the agency enter into an agreement under the SLRP.  *See* 5 C.F.R. § 537.106(b)(1).

B

On July 30, 2010, Dr. Anoruo contacted an Equal Employment Opportunity (EEO) counselor, alleging that VA discriminated against him based on national origin in denying his EDRP application, among other actions. He subsequently filed a complaint with the Equal Employment Opportunity Commission (EEOC), which dismissed his claims for failure to contact an EEO counselor within forty-five days of the allegedly discriminatory denial of his EDRP application on May 25, 2004. In May 2011, the EEOC affirmed the dismissal of Dr. Anoruo's discrimination claims. Dr. Anoruo unsuccessfully sought reconsideration of that decision.

Dr. Anoruo then filed a complaint in the U.S. District Court for the District of Nevada in December 2011, again alleging discrimination in VA's denial of his EDRP application. The district court dismissed his complaint for failure to exhaust his administrative remedies due to his untimely consultation with an EEO counselor, *Anoruo v. Shinseki*, No. 11-CV-2070, 2012 WL 3648448, at *2–3 (D. Nev. Aug. 23, 2012), and the Ninth Circuit affirmed, *Anoruo v. Shinseki*, 569 F. App'x 485, 486 (9th Cir. 2014).

C

On June 25, 2015, Dr. Anoruo filed a complaint in the Court of Federal Claims, and on March 11, 2016, he filed an amended complaint. He alleged that VA breached express or implied contracts by failing to award him payments under the EDRP or out of local funds, and he sought an award under the Back Pay Act, 5 U.S.C. § 5596, of amounts he was allegedly owed.

The government moved to dismiss Dr. Anoruo's complaint, and on January 29, 2018, the Court of Federal Claims granted the government's motion to dismiss. *Anoruo*, 136 Fed. Cl. at 95. The court determined that it had jurisdiction under the Tucker Act, 28 U.S.C. § 1491,

because the statutes underlying the EDRP and SLRP are money-mandating. *Id.* at 93–94. But it held that Dr. Anoruo had filed his EDRP claims too late under the Tucker Act's six-year statute of limitations, 28 U.S.C. § 2501, because the claims stated in his 2015 complaint had accrued on September 1, 2004, when Mr. Zurfluh notified him that his appeal to the national office had been denied. *Id.* at 94. As to Dr. Anoruo's claims premised on Mr. Bright's offer of reimbursement under the SLRP, the court concluded that Dr. Anoruo failed to state a claim because no enforceable contract under that statute had been formed. *Id.* at 94–95.

After Dr. Anoruo unsuccessfully sought reconsideration, he timely appealed to this court. We have jurisdiction under 28 U.S.C. § 1295(a)(3).

## II

We review de novo the trial court's dismissal of the claims. *Katzin v. United States*, 908 F.3d 1350, 1358 (Fed. Cir. 2018) (statute of limitations); *Horvath v. United States*, 896 F.3d 1317, 1319 (Fed. Cir. 2018) (failure to state a claim).

## A

Dr. Anoruo first argues that the Court of Federal Claims erred in determining that his claims based on the EDRP accrued on September 1, 2004, far more than six years before the filing of the complaint in 2015. We disagree.

A cause of action cognizable under the Tucker Act accrues when "all events have occurred to fix the Government's alleged liability, entitling the claimant to demand payment." *Martinez v. United States*, 333 F.3d 1295, 1303 (Fed. Cir. 2003) (en banc). "As a general matter, if a dispute is subject to mandatory administrative proceedings, the plaintiff's claim does not accrue until the conclusion of those proceedings." *Id.* at 1304. An administrative remedy that is merely permissive, however, "does not prevent the

accrual of the plaintiff's cause of action, nor does it toll the statute of limitations pending the exhaustion of that administrative remedy." *Id.*

Here, Dr. Anoruo contends that the statute of limitations began to run on September 21, 2011, when the Equal Employment Opportunity Commission denied his request for reconsideration of its decision dismissing his employment-discrimination claims. But Dr. Anoruo's claims before the EEOC, which involved allegations of employment discrimination in violation of Title VII of the Civil Rights Act of 1964, are distinct from the EDRP claims he filed in the Court of Federal Claims, which asserted that VA breached alleged contracts by denying Dr. Anoruo EDRP payments. Dr. Anoruo has not offered any basis for concluding that he was required to exhaust discrimination remedies with the EEOC before filing his EDRP-based claims in the Court of Federal Claims such that any EEOC proceedings would postpone the relevant accrual date. *See Martinez*, 333 F.3d at 1304. We add that the Tucker Act's six-year statute of limitations is jurisdictional and not subject to equitable tolling. *John R. Sand & Gravel Co. v. United States*, 552 U.S. 130, 134 (2008); *Young v. United States*, 529 F.3d 1380, 1384 (Fed. Cir. 2008).

Dr. Anoruo argues in the alternative that his EDRP claims accrued on July 21, 2011, the date of the letter from the director of the national office acknowledging that the delay in completing his application was caused by VASNHS officials. That letter, however, simply provided an additional explanation for the denial of the EDRP application in 2004. As the Court of Federal Claims correctly concluded, Dr. Anoruo has not shown that this letter was the result of any mandatory administrative appeal proceedings that could have tolled the limitations period. *See Anoruo*, 136 Fed. Cl. at 94; *see also Martinez*, 333 F.3d at 1304.

B

With respect to his SLRP claims, Dr. Anoruo argues that the Court of Federal Claims erred in determining that no contract had been formed between him and VA that could be enforced under the Tucker Act. We again disagree.

To establish an express or implied contract with the government, a plaintiff must show, among other elements, "actual authority of the government representative whose conduct is relied upon to bind the government." *Moda Health Plan, Inc. v. United States*, 892 F.3d 1311, 1329 (Fed. Cir. 2018). "Actual authority may be either express or implied." *Liberty Ammunition, Inc. v. United States*, 835 F.3d 1388, 1402 (Fed. Cir. 2016). A government representative "possesses express authority to obligate the [g]overnment only when the Constitution, a statute, or a regulation grants it to that employee in unambiguous terms." *Abraham v. United States*, 81 Fed. Cl. 178, 186 (2008) (emphases omitted). Implied authority, in turn, exists only when that authority is an "integral part of the duties assigned to [the] government employee," *i.e.*, "when the government employee could not perform his or her assigned tasks without such authority." *Liberty Ammunition*, 835 F.3d at 1402.

Here, the Court of Federal Claims characterized Mr. Bright's alleged offer to pay Dr. Anoruo $40,000 as "contemplating use of the federal [SLRP]." *Anoruo*, 136 Fed. Cl. at 92. Dr. Anoruo asserts that Mr. Bright offered to pay him out of local funds rather than through the SLRP. Under either characterization, Dr. Anoruo's complaint fails to state a claim for breach of contract.

If the alleged offer contemplated use of SLRP funds, Mr. Bright lacked express authority to commit the government to make SLRP payments under the circumstances Dr. Anoruo describes in his complaint. The statute underlying the SLRP prohibits agencies from "pay[ing] any

amount to reimburse an employee for any repayments made by such employee prior to the agency's entering into an agreement under [the SLRP] with such employee," and such an agreement must be "in writing." 5 U.S.C. § 5379(b)(3), (c)(1). But Dr. Anoruo concedes that the alleged agreement to pay him $40,000 was not in writing, so that alleged agreement was outside the coverage of the SLRP statute. And although he alleges a written offer to pay him $13,300, he also alleges that he rejected that offer, which thus did not create a contract.

Dr. Anoruo fares no better if the alleged contract-forming offer was to pay Dr. Anoruo out of local funds rather than under the SLRP. Dr. Anoruo has not pointed to any statute, regulation, or other source of authority specifically authorizing Mr. Bright to use local funds to reimburse employees for student loan debt payments. Nor has Dr. Anoruo demonstrated that Mr. Bright had implied authority to make such an offer—regardless of the source of funds—as an "integral part of the duties assigned to" him. *See Liberty Ammunition*, 835 F.3d at 1402.

Dr. Anoruo points to some alternative theories of recovery. But even putting aside questions of waiver by failure properly to raise the theories in the trial court, these theories are no basis for reversal here. Dr. Anoruo's quantum meruit theory cannot succeed whether viewed as an implied-in-law or implied-in-fact contract theory. The Court of Federal Claims generally lacks jurisdiction over implied-in-law contracts. *Seh Ahn Lee v. United States*, 895 F.3d 1363, 1373–74 (Fed. Cir. 2018). And as already discussed, no implied-in-fact contract was formed. *See id.* at 1374 ("The assertion of quantum meruit as a basis for calculating damages cannot rescue an implied-in-fact theory of recovery that is otherwise not cognizable."). Dr. Anoruo's recoupment theory is similarly unavailing, as he has not identified any mutual debts arising from a single transaction, let alone any claim against him to which recoupment would serve as an equitable defense. *See In re Straightline*

*Invs., Inc.*, 525 F.3d 870, 882 (9th Cir. 2008). Finally, Dr. Anoruo's arguments about opportunity costs relate only to his damages if the government were found liable, not the government's liability in the first instance. *Cf. Union Boiler Works, Inc. v. Caldera,* 156 F.3d 1374, 1376 (Fed. Cir. 1998).

## III

For the foregoing reasons, we affirm the decision of the Court of Federal Claims.

No costs.

**AFFIRMED**