## ARMED SERVICES BOARD OF CONTRACT APPEALS

Appeal of -- )
)
Globe Trailer Manufacturing, Inc. ) ASBCA No. 60979
)
Under Contract No. W56HZV-11-D-0204 )

APPEARANCES FOR THE APPELLANT: G. Lindsay Simmons, Esq.
Eric Whytsell, Esq.
Jackson Kelly PLLC
Washington, DC

APPEARANCES FOR THE GOVERNMENT: Arthur M. Taylor, Esq.
DCMA Chief Trial Attorney
Michael T. Patterson, Esq.
Trial Attorney
Defense Contract Management Agency
Chantilly, VA

### OPINION ON CROSS-MOTIONS FOR SUMMARY JUDGMENT BY ADMINISTRATIVE JUDGE D'ALESSANDRIS

Pending before the Board are cross-motions for summary judgment regarding the proper interpretation of the termination settlement provision for commercial item contracts, Federal Acquisition Regulation (FAR) 52.212-4(1), when the contract additionally contains a provision for first article testing, FAR 52.209-4. The Department of the Army (government or Army) awarded a requirements contract for low-bed semitrailers to appellant, Globe Trailer Manufacturing, Inc. (Globe). The commercial items contract required Globe to submit eight trailers as part of the first article test procedures. These test trailers were separate contract line-items (CLINs) in the first delivery order. Pursuant to the first article test requirements, any work beyond the first article test units was performed at Globe's risk. Globe submitted the first article test units; however, the Army terminated the contract for convenience of the government before the first article test units were approved. After Globe submitted a termination settlement proposal, the termination contracting officer issued a final decision limiting Globe's recovery to the first article test contract line items.

In the pending cross-motions, the government contends that the first article test provision caps Globe's recovery for work related to the first articles at the amount of the first article test line items. Conversely, Globe contends that its recovery is not limited to the first article contract line items, but that it can recover all reasonable charges relating to production of the first articles. For the reasons stated below, we

grant both motions in part, holding that Globe is entitled to recover for work performed pursuant to non-first article test contract line items that were required to be delivered prior to first article approval, but that Globe's recovery for work necessary for first article approval is limited to the amount of the CLINs for the first article test line items.

## STATEMENT OF FACTS (SOF) FOR PURPOSES OF THE MOTIONS

On September 21, 2011, the Army awarded Contract W56HZV-11-D-0204 and delivery order 0001 to Globe. The contract was a five-year requirements contract for M870A4 low bed semitrailers and related deliverables. (R4, tab 1 at G-1-10) The M870A4 is a trailer intended for military use on diverse surfaces and in all climates (*id.* at G-46) Relevant to this appeal, the delivery order included separate CLINs including CLIN0001AA for one shakedown test trailer, CLIN0002AA for one First Production Verification Inspection (FPVI) test trailer, CLIN0003AA for five Production Verification Test (PVT) trailers, CLIN0004AA for one Logistics Demonstration (Log Demo) test trailer,[1] CLIN0006AA for contract data requirements lists (CDRLs), and CLIN1001AA for 641 first year production trailers for a total amount of $39,613,221.27 (R4, tab 1 at G-1-10, tab 9 at G-176, 181). CLINs 0002AA and 0003AA contain similar provisions providing that "[a]ll costs associated with the trailer...are to be included in the unit price" (R4, tab 1 at G-5, 6). Two additional delivery orders followed (R4, tabs 15, 19).

Relevant to this appeal, the contract contained FAR 52.209-4 FIRST ARTICLE APPROVAL – GOVERNMENT TESTING (SEP 1989) – Alternate Sep/1989 I (Jan 1997) AND ALTERNATE II (SEP 1989) providing that "(h)...[u]ntil first article approval is granted, only costs for the first article and costs incurred under this authorization are allocable to this contract for (1) progress payments, or (2) termination settlements if the contract is terminated for the convenience of the Government" (R4, tab 1 at G-66-67). The contract additionally incorporated by reference FAR 52.212-4 CONTRACT TERMS AND CONDITIONS – COMMERCIAL ITEMS providing that:

> (l) Termination for the Government's convenience.
> The Government reserves the right to terminate this
> contract, or any part hereof, for its sole convenience....
> Subject to the terms of this contract, the Contractor shall be
> paid a percentage of the contract price reflecting the
> percentage of the work performed prior to the notice of

---

[1] The log demo trailer was not part of first article testing (R4, tab 1 at G-44); however, the contracting officer compensated Globe for the line item in the final decision (R4, tab 31 at G-339), and the government does not dispute Globe's entitlement to compensation for this contact line item.

2

termination, plus reasonable charges the Contractor can demonstrate to the satisfaction of the Government using its standard record keeping system, have resulted from the termination....

(R4, tab 1 at G-64); FAR 52.212-4(l)[2]

The contract provided for an Engineering Change Proposal (ECP) process:

C.3.3.1 Engineering Change Proposal (ECP) - Contractor Requested

a. Requirement for Submittal. After the Government provides Production Configuration approval based on the successful completion of [first article testing] FAT, including changes required to correct deficiencies discovered during the First Production Vehicle Inspection (FPVI) and Production Verification Test (PVT), the Contractor shall submit an Engineering Change Proposal (ECP) for any configuration change to the approved baseline for any of the M870A4 Semitrailers which impact form, fit, or function. ECPs shall be submitted for all subsequent changes identified after production start to the end of production....

(R4, tab 1 at G-25) Paragraph C.3.3.2 additionally provided that government directed changes would be initiated by the contracting officer requesting a technical and price proposal (R4, tab 1 at G-26).

After the contract was awarded, the Army made several changes to the design of the trailers through bilateral modifications. Modification No. P00001, among other things, raised the trailer deck height and changed the proposed trailer tires. (R4, tab 2 at G-83; app. supp. R4, tab 504 at 3). Modification No. P00003 incorporated domestically sourced wheels and tires on the M870A4 trailers (R4, tab 4 at G-128-29). Modification No. P00004 funded CLIN 0003AC to provide test service representatives at Aberdeen Test Center and Yuma Test Center (R4, tab 5 at G-140). In Modification No. P00006, the Navy accepted aluminum wheels as consideration for late deliveries of test assets and CDRLs (R4, tab 7 at G-169).

---

[2] The contract also contains FAR 52.249-2, TERMINATION FOR CONVENIENCE OF THE GOVERNMENT (FIXED PRICE) (R4, tab 1 at 65); however, the parties agree that FAR 52.212-4(1) controls here (app. reply at 2).

In addition to the changes to the configuration of the first article test trailers made by contract modification, Globe asserts that the government constructively changed the contract. Globe asserts that the Navy made constructive changes including the refusal to include a +/- 3% weight variance; requiring trailer deck width extensions; providing defective wiring specifications; requiring design and manufacture of a trailer attachment shackle not required by the contract; requiring a more extensive quality assurance plan than required by the contract; and "recommending" that Globe build an additional trailer and conduct an additional test at the Aberdeen Testing Grounds (app. supp. R4, tab 552 at 39-46).

On March 11, 2014, the Army terminated the Contract for convenience, stating that such action was taken pursuant to the FAR 52.212-4(l) termination for convenience clause for commercial item contracts (R4, tab 23). On November 12, 2014, Globe submitted its termination settlement proposal using the Standard Form 1435 (inventory basis settlement proposal) in the amount of $7,233,387.89 (R4, tab 25). On October 7, 2016, the termination contracting officer issued a final decision awarding Globe $987,345.76. The termination contracting officer determined that Globe was entitled to the price of work completed on the first article contract line items in the amount of $977,345.76 under the first prong of the FAR 52.212-4(l) commercial items termination for convenience clause. The termination contracting officer also awarded Globe $10,000 under the second prong of the commercial items termination for convenience clause as costs resulting from the termination. (R4, tab 31 at G-336, 339-40)

On December 29, 2016, Globe appealed the contracting officer's final decision to the Board. On June 30, 2017, Globe submitted a revised termination settlement proposal in the amount of $21,003,162.54. The proposal stated that Globe was entitled to $21,003,162.54 under the commercial item clause and $10,733,308.50 under the standard Part 49 clause for "traditional government contracts." Globe asserted that it was entitled to the higher amount because the Army issued the termination for convenience under FAR 52.212-4(l), and since the contract contained both 52.212-4 and 52.249-2, Globe was entitled to recover costs allowable under either clause. (App. supp. R4, tab 552 at 3, 5) Globe's revised termination settlement proposal claimed entitlement to compensation for purported constructive changes to the contract, and these claims were included in Globe's July 17, 2017 complaint filed in this appeal. In its answer to Globe's complaint, the government asserts that the revised settlement proposal "contained claims based upon additional operative facts that were not alleged in its original termination settlement proposal" (answer ¶ 27). The record in this appeal does not contain a final decision on Globe's revised termination settlement proposal, and Globe has not appealed from a deemed denial of the revised termination settlement proposal.

## DECISION

We will grant summary judgment only if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A material fact is one that may affect the outcome of the decision. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). The moving party bears the burden of establishing the absence of any genuine issue of material fact, and all significant doubt over factual issues must be resolved in favor of the party opposing summary judgment. *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1390-91 (Fed. Cir. 1987). Once the moving party has met its burden of establishing the absence of disputed material facts, then the non-moving party must set forth specific facts, not conclusory statements or bare assertions, to defeat the motion. *Pure Gold, Inc. v. Syntex (U.S.A.), Inc.*, 739 F.2d 624, 626-27 (Fed. Cir. 1984). The fact that both the government and Globe have moved for summary judgment does not require us to grant summary judgment for one side or the other; both motions can be denied in the event that there are material factual disputes regarding each motion. *See, e.g. Mingus*, 812 F.2d at 1391.

Globe contends that it is entitled to a termination settlement in excess of the first article contract line item costs due to certain purported constructive changes to the contract and due to its preparation of CDRLs pursuant to the contract but not part of the first article test contract line items. The government concedes the contractually required CDRLs, if actually performed, would be compensable in the termination settlement (gov't reply br. at 3 n.1). We agree that CDRLs, if completed and provided, should be included in the percentage of work performed pursuant to the first prong of FAR 52.212-4(1).

Globe contends that the constructive changes involved changes that were not necessary only for the first item, but were required for the production of all units, and thus are compensable costs pursuant to our holding in *Cape Tool & Die, Inc.*, ASBCA No. 46433, 95-1 BCA ¶ 27,465 (app. mot. at 14-17). Globe additionally contends that, to the extent it is unable to recover its costs pursuant to the percentage of work completed clause of FAR 52.212-4(l) (first prong), it can recover its costs as "reasonable charges" resulting from the termination because it planned to amortize its costs across all units, once the final configuration of the production trailers was settled (second prong) (app. mot. at 18-19). The parties do not appear to dispute recoverability of termination costs not related to the cost to produce the first article, such as the cost to prepare the settlement proposal (gov't reply br. at 8).

The government contends that Globe's recovery is limited to the first article test line item amounts (gov't mot. at 14-22). The government additionally contends that, to the extent Globe is seeking costs for constructive changes, it was required to submit engineering change proposals (gov't mot. at 22-27). In response to the government's

5

motion, Globe asserts that it was not required to seek compensation for the constructive changes through the engineering change proposal process because that process only applied after approval of the first item (app. mot. at 17).

We begin with the plain language of the FAR termination settlement provision. FAR 52.212-4, CONTRACT TERMS AND CONDITIONS – COMMERCIAL ITEMS provides that:

> (l) Termination for the Government's convenience. The Government reserves the right to terminate this contract, or any part hereof, for its sole convenience.... Subject to the terms of this contract, the Contractor shall be paid a percentage of the contract price reflecting the percentage of the work performed prior to the notice of termination, plus reasonable charges the Contractor can demonstrate to the satisfaction of the Government using its standard record keeping system, have resulted from the termination....

The Board previously interpreted this provision, finding:

> The first prong of the sentence providing for payment to the contractor of "a percentage of the contract price reflecting the percentage of work performed" prior to the termination notice, by its plain language, specifies a means for compensating the contractor for the work it has done before termination. The second prong of the sentence providing for payment to the contractor of "reasonable charges" the contractor can "demonstrate" "have resulted from the termination," when read in conjunction with the first prong of the sentence relating to recovery for work completed, refers to the recovery of those charges incurred that "do not relate to work completed" but should be reimbursed to fairly compensate the contractor whose contract has been terminated.

*SWR, Inc.*, ASBCA No. 56708, 15-1 BCA ¶ 35,832 at 175,223.

Here, the contract created separate line items for the first article test units and the production units, with an instruction to include all costs for the first article units, including testing costs, in the first article line items. In economic terms, the cost of a product includes both fixed costs and variable cost. Fixed costs are those costs that do not change with a change in the quantity produced while variable costs vary with

6

changes in the production volume.[3] Here, within the scope of the requirements contract for M870A4 semitrailers, the cost to produce the first article would include all fixed costs specific to the contract and all variable costs for the first articles. To the extent Globe argues that costs that would apply to the first article would also apply to the production units, this is something that would be true of any fixed cost allocated to the contract. Any design work, specialized tooling, or constructive changes to the design of the first article trailer would apply equally to the first article and the production units.

Globe argues that it intended to allocate these fixed costs across the entire production, noting that its bid charged the same unit price for the first article test semitrailers as the production trailers (app. resp. at 16). This may be true, but it is not what was required by the contract. The contract specifically informed offerors that "[a]ll costs associated with the trailer and testing of this vehicle are to be included in the unit price" (R4, tab 1 at G-6). Globe's decision to allocate its fixed costs to the entire production placed it at risk of not recovering the costs in the event that the contract were to be terminated for convenience. *See* FAR 52.209-4 ALT. II (SEP 1989) ("Until first article approval is granted, only costs for the first article and costs incurred under this authorization are allocable to this contract for...termination settlements if the contract is terminated for the convenience of the Government").

Globe additionally argues that the contract did not use mandatory language such as "shall" allocate and so it was not required to include the costs in its first article test line items (app. mot. at 15). We do not disagree that Globe could allocate costs to all production units; however, Globe's ability to allocate its costs in that manner does not require that the government reimburse it for costs other than the first article test line items in the event the government terminated the contract for convenience. (R4, tab 1 at G-67; FAR 52.209-4 ALT II (SEP 1989)).

The Board's opinion in *Cape Tool & Die*, which allowed for reimbursement of tooling costs otherwise allocated to production CLINs in a certain factual situation, does not change this analysis. In *Cape Tool & Die*, the appellant sought reimbursement for first article costs in a termination settlement proposal following a termination for convenience. 95-1 BCA ¶ 27,465 at 136,845. The contract in question called for 124 turn-around assemblies. *Id.* at 136,843. Cape Tool priced the two first article test units at $4,813 per assembly and the 122 production units at $2,628 each. *Id.* Unlike the contract at issue in this appeal, there is no indication that the contract in *Cape Tool* informed bidders to include all costs in the first article test contract line items. *Id.* at 136,844-45. Moreover, the contract in *Cape Tool* involved a different termination

---

[3] Of course, most fixed costs, other than intangible assets, are only fixed over a certain quantity of production. For example, at some production level, a business will need to expand the size of its facilities.

7

clause, FAR 52.249-2, than the clause at issue in this appeal. *Id.* at 136,843. Significantly, FAR 52.249-2 provides for recovery solely based on the contractor's costs, rather than reimbursement based on percentage of completion as in FAR 52.249-4(l).

In *Cape Tool* the Board awarded Cape Tool $10,814.47 for the share of tooling costs (122/124ths of $10,420) that were allocated to the production units. *Id.* at 136,847. The Board recognized its prior holding that contractors were not permitted to reimbursement of production unit costs incurred before approval of first article testing in the context of a termination for convenience. *Id.* at 136,846, citing *Century Electronics*, ASBCA No. 29123, 85-3 BCA ¶ 18,232.[4] However, the Board found that Cape Tool presented "a more complex issue, as the molds were necessary for both production units and first articles." *Id.* However, this statement would be true for *any* fixed cost related to *any* contract. The Board found the costs to be reasonable and consistent with the FAR because FAR 9.306(j) prohibits unbalanced bids and bids may be considered unbalanced under FAR 15.814(d)(1)[5] if first article prices are significantly higher than production units. *Id.*

The FAR's concern with unbalanced pricing in contracts with a first article test requirement applies, where, as here, there is a separate contract line item for the first article test items. *See* FAR 15.404-1(g)(1)(i). The concern is that an offeror could shift costs to the first article test items and under-price the production items. If the government were to terminate for convenience, as here, the contractor could be over-compensated. For example, in a procurement of 100 commercial off the shelf items selling for $10 each, for a total of $1,000, a contractor could offer two first article test items at $255 each and the 98 production items at $5 each. The total contract amount of $1,000 would be the same as if the offeror had priced all 100 units at $10 each, but the government would be at risk of overpaying for the first article test items if the contract were terminated for convenience after approval of the first articles and before the production units were delivered.

The FAR provision at issue in *Cape Tool* formerly provided that the contracting officers should compare offers before award "to determine if the offerors have significantly higher prices for the first articles than for the production units." FAR 15-814(d)(1) (1994). However, FAR 15-814(d)(1) was simply a "technique" that the contracting officer could

---

[4] The Board also cited, with a "*but c.f.*" signal, to *Continental Electronics Manufacturing Company*, ASBCA No. 14749, 71-2 BCA ¶ 9,108, apparently for the proposition that non-recurring costs amortized across production units can be reimbursed in a termination settlement. However, as the contract at issue in *Continental Electronics* did not include first article testing, it is not relevant.

[5] The provisions of FAR 15.814 have been recodified, with changes, at FAR 15.404.

8

use to determine if an offer was materially unbalanced. The provision at (d)(2) further provided that the contracting officer could also evaluate an individual offer (rather than comparing multiple offers against each other as in (d)(1)) to determine "for instance, whether manufacturing and special tooling, and test equipment costs, are prorated among the first articles and the production units, or are only applied to the first articles." FAR 15.814(d)(2) (1994).

The revised FAR provision applicable to this appeal, FAR 15.404(g)(1), provides that unbalanced pricing exists when "the price of one or more line items is significantly over or understated as indicated by the application of cost or price analysis techniques." Thus, unlike the FAR provision in effect for the contract in *Cape Tool*, the FAR now implicitly recognizes that first item prices may be higher than production unit prices due to manufacturing, special tooling and test equipment costs. The unbalanced bid provisions of the current FAR provision do not provide a basis for special treatment of molds or any other fixed-costs incurred in preparing the first articles in a contract with a first article test provision. Moreover, a concern with unbalanced pricing is irrelevant to Globe's claims regarding constructive changes because Globe is alleging changes that occurred *after* award of the contract. Simply put, purported post-award constructive changes cannot cause an unbalanced bid. For these reasons, we find that second prong of the termination settlement clause does not provide a basis for Globe to recover its claimed additional first article test costs.

Globe argues that the contract provisions requiring that "all costs" be included in the first article test unit prices do not prohibit its recovery of additional costs in the termination settlement because the contract does not use mandatory language, and because CLIN 0001AA, the CLIN for the "shakedown test trailer," does not contain the cited language (app. mot. at 15). First, we fail to see how a contract clause stating that "all costs...are to be included" can be read as anything other than a mandatory contractual requirement. To the extent Globe argues that it was not prohibited from amortizing costs across all production units, we agree; however, to the extent Globe actually did this, it did so at the risk that it would not recover those costs in a termination for convenience. (FAR 52.209-4; R4, tab 1 at 67) Globe is correct that CLIN0001AA, for the shakedown test trailer, does not contain a provision stating that all costs should be included in the first article test; however, the contract required that the shakedown test trailer be refurbished and resubmitted as one of the PVT trailers under CLIN0003AA, which does contain the language requiring the inclusion of all costs in the first item test contract line item. Moreover, to the extent Globe argues that the purported constructive changes were fixed costs applying to all trailers, such costs also applied to the PVT trailers in CLIN0003AA, which required inclusion of all costs. Thus, it is unclear what costs pertaining to the shakedown test trailer could remain to be included in Globe's claim.

9

With regard to the second prong of FAR 52.212-4(l), providing reimbursement of "reasonable charges" not related to the percentage of work completed, the parties do not dispute that Globe is entitled to certain charges, such as the costs of preparing the termination settlement proposal (gov't reply br. at 8). However, Globe contends that it is entitled to reimbursement of its "preparatory and other unamortized initial costs, including those related to first articles that [it] reasonably intended to spread over the production units but was unable to by reason of the termination" (app. resp. at 16). Globe cites to *SWR* for the proposition that these costs do not relate to the work completed but should be reimbursed to compensate Globe fairly (*id.*). However, Globe ignores the fact that the contract at issue in *SWR* did not contain a first article test provision which required inclusion of all costs into the first article test units. Compensation to the contractor in *SWR* was for preparatory costs on a contract that was terminated before any work was completed. *SWR*, 15-1 BCA ¶ 35,832 at 175,203. Globe's citations to *TriRAD Technologies, Inc.*, ASBCA No. 58855, 15-1 BCA ¶ 35,898 and *Campus Management Corporation*, ASBCA Nos. 59924, 59925, 17-1 BCA ¶ 36,727 (app. mot. at 18-19) suffer from the same fate as neither of these appeals involved first article testing. Here, Globe completed and was compensated for the first article units and the contract directed Globe to include all costs in the first article line items.

Having determined that the FAR termination for convenience provision, read in conjunction with the first article testing provision does not provide for costs in excess of the first article test contract line item amounts, we address Globe's assertion that it is entitled to additional compensation because the government constructively changed the configuration of the first article test trailers (app. mot. at 16-17). The government contends that Globe is not entitled to recovery because it failed to comply with the engineering change proposal process (gov't mot. at 22-27). A constructive change occurs when "a contractor performs work beyond the contract requirements without a formal order, either by an informal order or due to the fault of the Government." *Agility Public Warehousing Co. KSCP v. Mattis*, 852 F.3d 1370, 1385 (Fed. Cir. 2017), (quoting *Int'l Data Prods. Corp. v. United States*, 492 F.3d 1317, 1325 (Fed. Cir. 2007)).

Having determined that the termination for convenience clause does not provide a basis for Globe's recovery, we need not reach the government's argument that Globe failed to follow the engineering change proposal process. Resolution of Globe's motion, to the extent it alleges constructive change either as a factual issue regarding the percentage of contract work completed in the termination for convenience provision, or as a stand-alone basis for recovery, is not properly before the Board.[6]

---

[6] The government has not moved to dismiss Globe's constructive change claims on the basis of lack of jurisdiction. While we possess the power to determine our jurisdiction *sua sponte*, here, the issue has not been briefed. We note that the

10

Our reviewing court, the Federal Circuit, has held that CDA jurisdiction requires "both a valid claim and a contracting officer's final decision on a claim." *M. Maropakis Carpentry, Inc. v. United States*, 609 F.3d 1323, 1327 (Fed. Cir. 2010) (citing *James M. Ellett Constr. Co. v. United States*, 93 F.3d 1537, 1541-42 (Fed. Cir. 1996)). As noted in the facts above, Globe presented its inventory basis termination settlement proposal to the contracting officer in 2014 (R4, tab 25). That settlement proposal, was the subject of a contracting officer's final decision (R4, tab 31) providing the basis for this Board's jurisdiction. In 2017, after appeal to this Board, Globe submitted a revised settlement proposal, asserting entitlement to compensation for change orders (app. supp. R4, tab 552). This revised termination settlement proposal was not the subject of a contracting officer's final decision, and Globe has not appealed from a deemed denial of the claim. Indeed, the government has obliquely challenged (in its answer) our jurisdiction over the claim by asserting that the revised proposal "contained claims based upon additional operative facts that were not alleged in its original termination settlement proposal" (answer ¶ 27). Thus, we find that Globe has not established that its constructive change claims are properly before the Board, and deny Globe's motion for summary judgment with regard to these asserted costs.

## CONCLUSION

For the reasons stated above, we grant both motions in part, holding that Globe has established that the termination settlement should include compensation for work performed on contract data requirements lists required by contract line item 0006AA to be completed before first article approval, and that the first article test requirements prevent compensation in excess of the contract line item amounts. The parties are directed to file a joint status report with a proposed schedule for future proceedings within 45 days of the date of this order.

Dated: July 10, 2019

DAVID D'ALESSANDRIS
Administrative Judge
Armed Services Board
of Contract Appeals

(Signatures continued)

termination settlement proposal references an attached schedule (R4, tab 25 at G-249) that does not appear to be included in the record. Accordingly, we leave open the question of whether something in the record could support jurisdiction for Globe's constructive change claims.

11

I concur

JOHN J. THRASHER
Administrative Judge
Chairman
Armed Services Board
of Contract Appeals

I concur

OWEN C. WILSON
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 60979, Appeal of Globe Trailer Manufacturing, Inc., rendered in conformance with the Board's Charter.

Dated:

PAULLA K. GATES-LEWIS
Recorder, Armed Services
Board of Contract Appeals

12