# United States Court of Appeals for the Federal Circuit

2006-5083, -5094

INTERNATIONAL DATA PRODUCTS CORP.,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Cross Appellant.

Edward J. Tolchin, Fettmann, Tolchin & Majors, P.C., of Fairfax, Virginia, argued for plaintiff-appellant.

Allison Kidd-Miller, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for defendant-cross appellant. With her on the brief were Peter D. Keisler, Assistant Attorney General, and Deborah A. Bynum, Assistant Director. Of counsel on the brief were E. Michael Chiaparas, Director, Contract Disputes Resolution Center, Defense Contract Management Agency, of Manassas, Virginia, and John T. Lauro, Trial Attorney, Commercial Litigation Division, Air Force Legal Services Agency, of Arlington, Virginia.

Appealed from: United States Court of Federal Claims

Judge George W. Miller

# United States Court of Appeals for the Federal Circuit

2006-5083, -5094

INTERNATIONAL DATA PRODUCTS CORP.,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Cross Appellant.

_____

DECIDED:  June 27, 2007

_____

Before LOURIE, RADER, and PROST, Circuit Judges.

RADER, Circuit Judge.

The Air Force terminated for convenience its Desktop V contract with International Data Products Corporation (IDP) because IDP lost its status as a small entity favored under section 8(a) of the Small Business Act.  Small Business Act, Pub. L. No. 85-536, 72 Stat. 384 (codified as amended in scattered sections of 15 U.S.C.).  The Air Force, however, required IDP to continue to perform warranty and upgrade services under the contract.  IDP sued for the costs of performing those services.  The Court of Federal Claims determined that the termination for convenience also terminated IDP's obligation to continue to provide warranty and upgrade services.  Int'l Data Prods. Corp. v. United States, 70 Fed. Cl. 387, 394 (2006) (citing Int'l Data Prods. Corp. v. United States, 64 Fed. Cl. 642, 650-51 (2005)).  The Court of Federal Claims, however, also denied IDP's claim for termination costs.  Id. at 390.  IDP appeals the

denial of termination costs while the government cross-appeals the termination of IDP's obligation to provide services for which it already received payment. Because 15 U.S.C. § 637(a)(21)(A) does not terminate IDP's warranty and upgrade services obligations, this court reverses the trial court's holding that the termination for convenience terminated IDP's warranty and upgrade obligations. This court otherwise affirms the trial court's rulings.

I

IDP manufactures and sells computers and computer equipment. In 1995, IDP won award of a Small Business Administration § 8(a) contract to provide computers to the Air Force under the Desktop V contract. This contract was an indefinite-delivery, indefinite-quantity (ID/IQ) agreement. The contract consisted of a single base year with a minimum purchase requirement of $100,000 and four one-year options having no minimum purchase requirement. Under the contract terms, the Air Force needed only to buy a minimum of $100,000 in products and services from IDP and could purchase from other contractors after meeting the minimum purchase amount.

IDP's contract originally included a purchase maximum of $1.685 Billion. However, Dynamic Decisions, Inc. (DDI), a competitor of IDP, sued to enjoin the original contract. In the resulting settlement, both IDP and DDI received Desktop V contracts. Both contracts retained the $100,000 minimum purchase obligation. Both contracts also included a maximum at $729 million (a little less than half the maximum in IDP's original contract). The settlement agreement also amended the contracts to include an additional term, a "total estimated quantity" of $100 million.

In 1998, Dunn Computer Corporation (Dunn), a non-section 8(a) company, purchased IDP. Under § 637(a)(21)(A) of the Small Business Act, this acquisition required the Air Force to terminate IDP's contract because IDP would no longer qualify under section 8(a). 15 U.S.C. § 637(a)(21)(A) (2006). By this time, the Air Force had purchased a total of $35 million of equipment from IDP. The Air Force requested a waiver per § 637(a)(21)(B) from the Small Business Administration. The Administration, however, denied the request. On October 8, 1999, the Air Force officially notified IDP of the termination of its contract.

The termination letter stated:

This termination will not affect the rights and liabilities of the parties, arising under the contract or otherwise, concerning defects, guarantees or warranties relating to any articles or component parts furnished to the Government by the Contractor under the contract or this agreement, nor the rights and liabilities of the parties concerning software upgrades as required by Section C of the contract.

After the termination date, the Air Force continued to demand that IDP provide warranty and upgrade services. IDP attempted to convince the Air Force to abandon these services or negotiate an additional contract to cover their cost. The Air Force refused and threatened to default and debar IDP and its parent corporation if IDP did not perform as requested.

In mid-April 2000, IDP decided the warranty costs were threatening its survival and the survival of its parent company. IDP therefore stopped all warranty and upgrade work. IDP seeks damages to cover the cost to repair and replace components, shipping, labor, and fees paid to third party service firms.

II

In reviewing judgments of the Court of Federal Claims, this court reviews conclusions of law, such as contract or statutory interpretation, without deference. Mass. Bay Transp. Auth. v. United States, 254 F.3d 1367, 1372 (Fed. Cir. 2001); Kane v. United States, 43 F.3d 1446, 1448 (Fed. Cir. 1994). Findings of facts receive review under the "clearly erroneous" standard. City of El Centro v. United States, 922 F.2d 816, 819 (Fed. Cir. 1990); Hankins Constr. Co. v. United States, 838 F.2d 1194, 1195 (Fed. Cir. 1988).

A

The trial court held that when IDP entered into an agreement with Dunn Corporation, a non-section 8(a) entity, to purchase IDP, IDP was no longer required to continue to provide warranty and upgrade services under the Desktop V contract. Int'l Data Prods. 64 Fed. Cl. at 649. In particular, the trial court held that "the Government was required by the Small Business Act to terminate the Desktop V contract for convenience or seek a waiver allowing contract performance to continue as provided by 15 U.S.C. § 637(a)(21)(B)." Id. In the circumstances of this case, 15 U.S.C. § 637(a)(21)(A) requires the government to terminate the contract for the convenience of the government:

> Subject to the provisions of subparagraph (B), a contract (including options) awarded pursuant to this subsection shall be performed by the concern that initially received such contract. Notwithstanding the provisions of the preceding sentence, if the owner or owners upon whom eligibility was based relinquish ownership or control of such concern, or enter into any agreement to relinquish such ownership or control, such contract or option shall be terminated for the convenience of the Government, except that no repurchase costs or other damages may be assessed against such concerns due solely to the provisions of this subparagraph.

15 U.S.C. § 637(a)(21)(A) (emphases added). Section 637(a)(21)(B) authorizes the Small Business Administration to grant a waiver under specific enumerated conditions, none of which apply here. In its opinion, the trial court read § 637(a)(21)(A) to put an end to all work under the contract because the provision "does not allow partial termination of the contract." Id. at 650. The trial court explained that the requirements of § 637(a)(21)(A) would not always further the best interests of the agency. Id.

On appeal, the Air Force argues that the warranty attaches to the goods and does not terminate with the contract. In other words, the mandatory language of § 637(a)(21)(A) only requires termination of work under the contract, not warranties associated with the goods. The Air Force further argues that the original purchase price of the computer equipment included the cost of the warranty and upgrade services, which thus are already fully paid.

> IDP's contract includes the following warranty clause:
>
> The Contractor shall provide users with a minimum 3 year, on-site, full parts and labor warranty for all offered products (excluding software) which includes CLINS 0001-0005. The Contractor shall provide users with a minimum 5 year (4 years on-site, 5th year return to IDP) full parts and labor warranty for all offered products (excluding software), for SLINS 0007AA through 0007CE. For SLINS 0007AA though 0007CE, [the] contractor shall provide a three year on site, 24 hour fix or replace on hardware warranty, and a two year upgrade warranty on software. Computer system, printers, and peripheral shall be user expandable and maintainable without voiding the Contractor provided warranty. The warranty coverage shall be worldwide and provide for no charge problem reporting 24 hours per day, 7 days per week. The warranty shall provide for repairing or replacing products (excluding software) and prompt return to customer service after problem notification.

This warranty explicitly warrants parts and labor for a minimum of 3-5 years and provides a two-year warranty on software upgrades. This clause does not require the

Air Force to pay extra or separately for warranty or upgrade services. Indeed, the only reference to charges is the proviso that the "warranty coverage shall be worldwide and provide for <u>no charge problem reporting</u> 24 hours per day, 7 days per week." Thus, the terms of the contract show that the Air Force has already paid for the contested services.

The record supports in other ways as well the Air Force's contention that the cost of the warranty and upgrade services were incorporated into the cost of the equipment. The Air Force identifies several documents showing that the purchased equipment included express extended warranties and other bundled support services. IDP, in contrast, does not identify any evidence to support a claim that the warranty and upgrade services require additional payment beyond the purchase price.

Further, the Air Force's termination notice to IDP closely tracks the language in the federal procurement regulations. These regulations provide for contract termination without terminating the contractor's responsibility to honor its warranties. The termination notice letter specified:

> This termination will not affect the rights and liabilities of the parties, arising under the contract or otherwise, concerning defects, guarantees or warranties relating to any articles or component parts furnished to the Government by the Contractor under the contract or this agreement, nor the rights and liabilities of the parties concerning software upgrades as required by Section C of the contract.

Section 49.603-1(b)(7) of the Federal Acquisition Regulations (FAR) for "fixed-price contracts-complete termination" enumerates several rights and liabilities that are reserved (I.e., survive termination) including:

> (v) All rights and liabilities of the parties, arising under the contract or otherwise, and concerning defects, guarantees, or warranties relating to any articles or component parts furnished to the Government by the Contractor under the contract or this agreement.

2006-5083, -5094                                              6

48 C.F.R. § 49.603-1(b)(7)(v) (2007).

In light of this support in the regulations as well as the contract, this court determines that the termination for convenience did not extinguish IDP's obligations to provide warranty and upgrade services. Further, this court finds the trial court's holding inconsistent with 48 C.F.R. § 49.603-1(b)(7)(v). Thus, this court reverses the trial court and holds the termination for convenience of the Desktop V contract did not terminate the warranties and upgrade services.

B

Although the Air Force is entitled to the warranty and upgrade services under the contract, IDP presents several theories of recovery based on termination costs. Costs recoverable after a termination for convenience are governed by FAR 49.2 and 49.3. 48 C.F.R. §§ 49.201 et seq.; 48 C.F.R. §§ 49.301 et seq. Typical costs encompass, inter alia, the cost of preparations made, work done, and reasonable profit on these. IDP's theories include: expectation damages, warranty services under an express contract, warranty services under an implied in fact contract, warranty work under a theory of constructive change or equitable adjustment or cardinal change, and quantum meruit based on an implied in fact contract.

1. Expectation Damages

The termination clause in the contract specifies:

(b)(4) The Government shall pay:

(i) The reasonable, allowable and allocable costs, determined in accordance with FAR Part 31, incurred by the contactor, prior to the date of termination for completed work that has not previously been paid for; for work in process and materials directly related to the terminated portion of the contract ….

(ii) A reasonable profit on the terminated portion of the work.

(5) In no event shall the sum of the termination amounts payable and any amounts for items delivered under the contract exceed the <u>total contract price</u>.

(Emphasis added). IDP's original contract included a term for the contract maximum. After the suit with DDI, however, section B2 of the contract was amended, per the settlement agreement, to include an additional term, the "total estimate quantities:"

In accordance with the terms and conditions of the Settlement Agreement dated 8 September 1997, <u>the total estimated quantities</u> are hereby modified to reflect <u>a value of $100M.</u> The Contractor shall immediately notify the Air Force, in writing, when 80% of this estimate is reached. The Contractor shall not accept any orders which exceed the estimated quantities valued at $100M unless authorized by the Contracting Officer to do so.

(Emphases added).

The parties dispute the total contract price referenced in the contract's termination clause. IDP argues that the "total estimated quantities" language reflects the "needs" of the government and converts an ID/IQ contract into a requirements contract. IDP further argues that it was led to believe that it would receive a minimum of $100 million in orders. The government responds that IDP cannot recover expectation damages because the Desktop V contract provided that the unit prices for equipment included three-year warranties on parts and labor, and therefore, IDP could not have reasonably expected upon contract entry to receive any additional payment for warranty services.

Citing this court's decisions in <u>Varilease</u> and <u>Travel Centre</u>, the trial court held the "total contract price" of a ID/IQ contract is the minimum quantity stated in the contract. <u>Varilease Tech. Group, Inc. v. United States</u>, 289 F.3d 795 (Fed. Cir. 2002); <u>Travel</u>

Centre v. Barram, 236 F.3d 1316 (Fed. Cir. 2001). The trial court then noted the Air Force had ordered and paid for approximately $35 million worth of products and services under IDP's Desktop V contract. The trial court held that "because the termination clause provides that '[i]n no event shall the sum of the termination amounts payable and any amounts paid for items delivered under the contract exceed the total contract price,' IDP is not entitled to termination costs." Int'l Data Prods. 64 Fed. Cl. at 647.

This court finds IDP's reading of amended section B2 to be strained at best. Standing alone, the quoted language cannot convert an ID/IQ contract into a requirements contract. Further, the record does not show that the Air Force misled IDP into believing it would receive orders of $100 million. Indeed, the evidence of record weighs against IDP. The parties did not amend the option terms. Thus, the contract always consisted of one base year with a minimum purchase requirement and four one-year options. At the time of termination, the parties were 2.5 years into the contract. Thus, even though the Air Force had estimated it would eventually need $100 million worth of equipment, IDP never could have expected to automatically receive all of those orders.

## 2. Warranty Services under an Express Contract

Because the trial court held the termination for convenience completely terminated the contract, including IDP's warranty liability, it held IDP could not collect termination costs under a theory of express contract. Under the express contract theory, IDP argues the contract never actually terminated because the Air Force still demanded performance. Although this court holds IDP's warranty liability survives

termination of the contract, the contract terminated on notice to IDP. Because terminated, the contract cannot have survived to create an express performance obligation for the Air Force.

### 3. Warranty Services under an Implied-in-Fact Contract

As noted by the trial court, "a contract implied in fact is one 'founded upon a meeting of the minds, which, although not embodied in an express contract, is inferred, as a fact, from the conduct of the parties showing, in light of the surrounding circumstances, their tacit understanding.'" Int'l Data Prods. 70 Fed. Cl. at 400. In the present case, the record does not show a meeting of the minds. Indeed, IDP sent several communications to the Air Force disputing the continued existence of contract and its obligation to perform. IDP points to no circumstances to show that the parties had reached a firm and enforceable bargain. Therefore, this theory also fails.

### 4. Warranty Work Under a Theory of Constructive Change, Equitable Adjustment, or Cardinal Change

These theories require record evidence that the Air Force demanded work above and beyond that in the contract. Equitable adjustments are corrective measures that make a contractor whole when the Government modifies a contract. Ets-Hokin Corp. v. United States, 420 F.2d 716, 720 (Ct. Cl. 1970). A constructive change occurs where a contractor performs work beyond the contract requirements without a formal order, either by an informal order or due to the fault of the Government. Miller Elevator Co. v. United States, 30 Fed. Cl. 662, 678 (1994). A cardinal change is a breach that occurs when the Government effects a change in the work so drastic that it effectively requires the contractor to perform duties materially different from those in the original bargain. Krygoski Constr. Co., Inc. v. United States, 94 F.3d 1537, 1543 (Fed.Cir.1996) The

Desktop V contract no longer existed at the time that IDP performed post-termination warranty and upgrade services. Therefore, this work (not really even fairly characterized as "additional" to the contract) would not constitute a constructive, equitable, or cardinal change to the contract. Rather, IDP's warranty and upgrade work fell under express warranty and upgrade clauses of the contract. Thus, this court affirms the trial court's denial of recovery under each of these theories.

### 5. Quantum Meruit Based on an Implied-in-Fact Contract

A recovery in quantum meruit is based on an implied-in-law contract. That is, a contract in which there is no actual agreement between the parties, but the law imposes a duty in order to prevent injustice. The Court of Federal Claims, however, lacks jurisdiction over contracts implied in law. 28 U.S.C. § 1491(a)(I) (2000). On the other hand, "[w]here a benefit has been conferred by the contractor on the government in the form of goods or services, which it accepted, a contractor may recover at least on a quantum valebant or quantum meruit basis for the value of the conforming goods or services received by the government prior to the rescission of the contract for invalidity. The contractor is not compensated under the contract, but rather under an implied-in-fact contract." United Pac. Ins. Co. v. United States, 464 F.3d 1325, 1329-30 (Fed. Cir. 2006). The Desktop V contract, however, is neither invalid nor unenforceable. Thus, this exception does not apply.


Accordingly,

IT IS ORDERED THAT the trial court decision is AFFIRMED-IN-PART and REVERSED-IN-PART.