**DOCUMENT FOR PUBLIC RELEASE.**
**The decision issued on the date below is subject to an ASBCA Protective Order.**
**This version has been approved for public release.**

ARMED SERVICES BOARD OF CONTRACT APPEALS

| | | |
|---|---|---|
| Appeals of - | ) | |
| | ) | |
| Supreme Foodservice GmbH | ) | ASBCA Nos. 58958, 58959, 58982 |
| | ) | 59038, 59164, 59165 |
| | ) | 59391, 59392, 59393 |
| | ) | 59418, 59419, 59420 |
| | ) | 59481, 59615, 59618 |
| | ) | 59619, 59653, 59675 |
| | ) | 59676, 59681, 59682 |
| | ) | 59683, 59830, 59863 |
| | ) | 59867, 59872, 59879 |
| | ) | 60017, 60024, 60250 |
| | ) | 60309, 60365, 60724 |
| | ) | 60832, 61069, 61123 |
| | ) | 61293, 61294, 61319 |
| | ) | 61370, 61837 |
| | ) | |
| Under Contract No. SPM300-05-D-3130 | ) | |

APPEARANCES FOR THE APPELLANT:　　John R. Prairie, Esq.
　　　　　　　　　　　　　　　　　　　　J. Ryan Frazee, Esq.
　　　　　　　　　　　　　　　　　　　　Sarah B. Hansen, Esq.
　　　　　　　　　　　　　　　　　　　　Jennifer Eve Retener, Esq.
　　　　　　　　　　　　　　　　　　　　　Wiley Rein LLP
　　　　　　　　　　　　　　　　　　　　　Washington, DC

　　　　　　　　　　　　　　　　　　　　Bryan T. Bunting, Esq.
　　　　　　　　　　　　　　　　　　　　　Cohen Mohr LLP
　　　　　　　　　　　　　　　　　　　　　Washington, DC

APPEARANCES FOR THE GOVERNMENT:　　Daniel K. Poling, Esq.
　　　　　　　　　　　　　　　　　　　　　DLA Chief Trial Attorney
　　　　　　　　　　　　　　　　　　　　Steven C. Herrera, Esq.
　　　　　　　　　　　　　　　　　　　　Lindsay A. Salamon, Esq.
　　　　　　　　　　　　　　　　　　　　Anne P. Steel, Esq.
　　　　　　　　　　　　　　　　　　　　Ryan P. Hallisey, Esq.
　　　　　　　　　　　　　　　　　　　　Stacey E. Hirsch, Esq.
　　　　　　　　　　　　　　　　　　　　　Trial Attorneys
　　　　　　　　　　　　　　　　　　　　　DLA Troop Support
　　　　　　　　　　　　　　　　　　　　　Philadelphia, PA

**DOCUMENT FOR PUBLIC RELEASE.**
**The decision issued on the date below is subject to an ASBCA Protective Order.**
**This version has been approved for public release.**

OPINION BY ADMINISTRATIVE JUDGE O'CONNELL ON RESPONDENT'S MOTION FOR SUMMARY JUDGMENT, MOTION TO STRIKE, AND MOTION TO DISMISS, AND APPELLANT'S CROSS-MOTION FOR SUMMARY JUDGMENT AND TO DISMISS DLA'S CLAIMS AND MOTION TO AMEND ITS PLEADINGS

ASBCA Nos. 60250, 60309 and 61370 are affirmative claims by the Defense Logistics Agency (DLA) on the above-captioned subsistence prime vendor (SPV) contract. The remaining 38 appeals are claims of the appellant, Supreme Foodservice GmbH (Supreme). DLA moves for summary judgment on those 38 appeals based on the doctrine of prior material breach. Supreme opposes that motion but, if the Board should disagree, Supreme contends that there is no basis for dismissal of appeals if the claim arose during the last year of performance under a bridge contract. Supreme further contends that even if the prior material breach doctrine applies it should be able to seek recovery based on quantum meruit and seeks leave to amend its pleadings in 26 appeals to add a quantum meruit count. Finally, Supreme contends that if the Board dismisses its claims due to prior material breach, DLA's claims must be dismissed as well.

The Board grants DLA's motion except as to costs incurred during the bridge contract and the Panama contract. The Board denies Supreme's motion to amend its pleadings to add a quantum meruit theory and dismisses quantum meruit counts that are already pending. The Board denies Supreme's motion to dismiss DLA's claims.

STATEMENT OF FACTS FOR PURPOSES OF THE MOTION

These appeals arise from a commercial items contract to furnish and deliver food and related items in Afghanistan. The Board conducted a hearing from January 15 to February 14, 2019, concerning the rates per pound Supreme was entitled to be paid for transporting the goods to forward operating bases (FOBs) by truck, airplane, and helicopter. The parties refer to the FOB deliveries as premium outbound transportation (POT). *Supreme Foodservice GmbH*, ASBCA No. 57884, *et al.*, 20-1 BCA ¶ 37,618 (*Supreme I*), *reh'g denied*, 20-1 BCA ¶ 37,716 (*Supreme II*).

One of the major issues in those appeals was DLA's assertion of a prior material breach defense to Supreme's claims based on Supreme's guilty plea to an information filed in the District Court for the Eastern District of Pennsylvania charging it with major fraud against the United States, 18 U.S.C. § 1031, and other crimes arising from its work on the SPV contract. Supreme agreed to a forfeiture, fines, and restitution totaling $250 million, plus a reconciliation, or true-up, of $38,362,198.71 related to the amounts Supreme had charged DLA for water, which was one of the two

**DOCUMENT FOR PUBLIC RELEASE.**
**The decision issued on the date below is subject to an ASBCA Protective Order.**
**This version has been approved for public release.**

principal subjects of the information. *Supreme I*, 20-1 BCA ¶ 37,618 at 182,620-21 (findings 203, 210-13).

After the hearing, the Board considered whether it was necessary to address DLA's prior material breach defense because it appeared that the Board could establish POT rates simply by addressing DLA's claim that the initial rates were too high and that it had overpaid Supreme. *Supreme I*, 20-1 BCA ¶ 37,618 at 182,626-27. But Supreme joined DLA in requesting that the Board address DLA's defenses. In its post-hearing reply brief, Supreme stated that resolving the appeals based simply on the initial DLA claim was "somewhat problematic" (ASBCA No. 57884, app. reply br. at 37). Supreme contended that "avoiding the defenses may introduce uncertainty on appeal and delay a full resolution of this long-running dispute" (*id.*). Supreme further contended:

> [T]he evidence relating to [DLA's affirmative defenses] is fresh in the minds of the Board and the parties. DLA's defenses can be readily disposed of on jurisdictional grounds and/or because they are deficient legally and factually. Resolution of these defenses, will also aid the parties' assessment of the many other pending non-POT claims to which DLA has asserted many of the same defenses, avoiding the risk that the parties must re-litigate them years from now.[1]

(*Id.*)

The Board agreed with the parties that it was appropriate to address DLA's prior material breach defense. Even if DLA was the primary claimant, Supreme had a claim for interest on excess amounts withheld by DLA. In the merits decision, the Board agreed with Supreme on some of the elements of the disputed costs, which meant that DLA had withheld too much. *Supreme I*, 20-1 BCA ¶ 37,618 at 182,627.

The Board rejected Supreme's contention that DLA had waived the prior material breach defense because it continued to allow Supreme to perform after learning of some aspects of Supreme's fraud. The Board based its decision, in part, on the decision of the Court of Appeals for the Federal Circuit in *Laguna Construction Company, Inc. v. Carter*, 828 F.3d 1364 (Fed. Cir. 2016). In *Laguna*, the Federal Circuit held that it was reasonable for the agency to wait to assert the prior material breach defense until after an executive of the company entered a guilty plea, more than two and a half years after completion of the physical work on the contract. *Supreme I*, 20-1 BCA ¶ 37,618 at 182,628 (citing *Laguna*, 828 F.3d at 1372).

---

[1] The non-POT claims are those captioned above and which are the subject of the pending cross motions. They were stayed during the POT litigation.

3

DOCUMENT FOR PUBLIC RELEASE.
**The decision issued on the date below is subject to an ASBCA Protective Order.
This version has been approved for public release.**

Based on the Board's findings, the parties stipulated that DLA had overpaid POT costs to Supreme by $397,854,788.45 and that DLA had withheld $540,832,442.70. The Board issued a decision finding that Supreme was entitled to the difference: $142,977,654.25. *Supreme Foodservice GmbH*, ASBCA No. 57884, *et al.*, 2021 WL 1086603, at *2 (Mar. 2, 2021).[2]

Supreme filed an appeal with the Federal Circuit on May 12, 2021.

Two days later, on May 14, 2021, DLA filed the present motion seeking, among other things, summary judgment on Supreme's 38 affirmative claims based on the Board's determination that Supreme had committed a prior material breach.

Supreme filed an opposition, informing the Board that it intended to challenge the following three rulings at the Federal Circuit: 1) that DLA did not waive its prior material breach defense; 2) that CDA interest on amounts over-withheld by the government was a contractor claim subject to the government's affirmative defenses; and 3) that Supreme's breach of "the original SPV Contract" was also a breach of what Supreme called "the two subsequently-awarded bridge contracts" (app. opp'n. at 2).[3] Supreme requested that the Board defer ruling on DLA's motion until after the Federal Circuit issued a decision.

The Board deferred ruling on DLA's summary judgment motion as Supreme requested.

The Federal Circuit affirmed the Board's decision. *Supreme Foodservice GmbH v. Dir. of Def. Logistics Agency*, 54 F.4th 1362 (Fed. Cir. 2022) (*Supreme III*). The Court held that DLA did not have a known right until Supreme entered its guilty plea in December 2014 and could not have waived its prior material breach defense before that plea, even if DLA knew about some aspects of the fraud in 2009. *Id.* at 1368. The Court held that Supreme's demand for interest on the amounts withheld by DLA was a contractor claim that was subject to DLA's prior material breach defense. *Id.* at 1368-70. The Court rejected Supreme's contention that the extension of the contract from December 2010 to December 2012 was a bridge contract that should be treated as a separate contract for purposes of DLA's prior material breach

---

[2] In the joint stipulation, DLA informed the Board that its claims against Supreme in ASBCA Nos. 60250, 60309, and 61370 totaled $88,494,087.78 and that it anticipated that the Defense Finance and Accounting Service would continue to withhold payment of this amount to Supreme, as well as any applicable interest or fees on the $397,854,788.45 overpayment. 2021 WL 1086603, at *2 n.4.

[3] Supreme's original opposition to the government's motion for summary judgment is referred to herein as "app. opp'n at ___."

**DOCUMENT FOR PUBLIC RELEASE.**
**The decision issued on the date below is subject to an ASBCA Protective Order.**
**This version has been approved for public release.**

defense. *Id.* at 1370. Finally, the Court affirmed the Board's ruling that the final extension from December 2012 to December 2013 was a bridge contract but that Supreme should not be allowed to treat the bridge contract "as separate only when it attempts to evade the government's affirmative defenses." *Id.*

The Federal Circuit issued its mandate on March 15, 2023. On March 31, 2023, Supreme filed a supplemental opposition[4] to DLA's motion and a cross-motion for summary judgment and to dismiss DLA's claims. Supreme also filed a motion to amend its pleadings in 26 of the appeals to add a count for quantum meruit.

Supreme alleges that the 38 appeals containing its affirmative claims collectively are worth more than $384 million (app. opp'n at 6-7). The Board does not believe that it is necessary to describe the contentions in each appeal, although we believe it is helpful to place them into categories.

For purposes of the pending motions, the Board will classify the appeals as follows: 1) appeals where Supreme's costs were incurred from the time of award in June 2005 until the original contract (including the two-year extension) expired on December 12, 2012; 2) appeals where Supreme incurred costs during both the original contract term and during the bridge contract; 3) appeals where Supreme incurred the costs solely during the bridge contract (December 13, 2012 to December 12, 2013); 4) Supreme's claim for unpaid costs on a separate SPV contract in Panama; and 5) the three appeals that are affirmative DLA claims. The Board will provide short descriptions of appeals that illustrate the five categories.

Category 1

*ASBCA No. 58959 – Tri-walls - $21,396,073*

Supreme alleges that in Modification No. P00010, the contracting officer (CO) definitized the price for heavy-duty cardboard boxes (tri-walls) used to ship food to the FOBs at $241 for chilled tri-walls and $302 for frozen tri-walls. DLA made some payments to Supreme but did not pay for the tri-walls used in the deliveries from December 20, 2010 to December 12, 2012. (Appellant's statement of genuine issues of material fact (ASGIMF) at 33-37).

*ASBCA No. 59653 – DBA Insurance - $24,172,488.62*

Supreme alleges that through an October 2008 contract modification, DLA required Supreme to provide Defense Base Act insurance to covered personnel.

---

[4] Supreme's supplemental opposition to the government's motion for summary judgment will be referred to herein as "app. supp. opp'n at ___."

**DOCUMENT FOR PUBLIC RELEASE.**
**The decision issued on the date below is subject to an ASBCA Protective Order.**
**This version has been approved for public release.**

Supreme provided the insurance but DLA failed to pay for the costs of the insurance incurred between 2009 and 2012. (ASGIMF at 74-78).

Category 2

*ASBCA No. 59615 – Water Transport - $74,300,020*

Supreme alleges that in late 2009 DLA directed Supreme to purchase its water supply from local Afghan sources. Despite extensive negotiations from late 2009 to October 2012, the parties failed to agree on a price. DLA failed to pay Supreme for water transported from local sources to Supreme's Helmand Regional Distribution Center (HRDC) from October 2009 to October 2013. (ASGIMF at pp. 70-74).

Category 3

*ASBCA No. 59676 – Tri-walls - $6,508,842*

Same facts as ASBCA No. 58959 described in Category 1 above but the period at issue is the bridge contract: December 13, 2012 to December 12, 2013 (ASIGMF at pp. 33-37).

*ASBCA No. 59867 – DBA Insurance - $8,353,765.76*

Same facts as ASBCA No. 59653 described above, but the Defense Base Act insurance was provided during the bridge contract (ASGIMF at pp. 74-78).

Category 4

*ASBCA No. 61123 – SPV Panama - $5,415,718.79*

Supreme alleges that on June 1, 2012, DLA awarded Supreme a separate SPV contract to be performed in Panama. Supreme delivered food and other items as requested by DLA. DLA approved Supreme's invoices and paid some of them but did not pay the amount listed above. (ASIGMF at 116-18). In response to an inquiry by Supreme, on May 24, 2016, the CO explained the non-payment by stating that it was "due to a debt that Supreme owes the Government," which, as Supreme states, presumably related to the Afghanistan SPV contract (ASIGMF at 118). In its answer, DLA discusses its affirmative defenses on the Afghanistan contract at great length and seems to contend that they are applicable to the Panama contract (answer at 6-25).

Category 5

*ASBCA No. 61370 – Performance based distribution fees - $49,322,986*

6

**DOCUMENT FOR PUBLIC RELEASE.**
**The decision issued on the date below is subject to an ASBCA Protective Order.**
**This version has been approved for public release.**

DLA alleges in its complaint that the contract provided for performance-based distribution fees (PBDF). If during a six-month period the CO rated Supreme's performance as good, Supreme would be entitled to the standard PBDF provided for by the contract. If the CO rated Supreme as excellent, Supreme would be entitled to a 5% increase in the fee. On the other hand, if the CO rated Supreme's performance as fair, the fee would be decreased by 5%. From December 2005 until December 2010, the CO rated Supreme's performance as either good or excellent. In an October 11, 2017 final decision, she stated that, if she had known about Supreme's fraud and other misconduct on the contract, she would have rated Supreme's performance as "fair." She reduced the fees based on revised assessments of fair and demanded the return of $49,322,986. (Compl. ¶¶ 2-6, 21).

## DECISION

I. Supreme is Bound by the Board's Ruling of Prior Material Breach for Work Performed on the SPV Contract Through December 12, 2012

A. From Award to Expiration of the Original Contract on December 12, 2012

Having received what it asked for – a ruling on prior material breach – Supreme is dissatisfied and does not wish to abide by the rulings of the Board and Federal Circuit. In Supreme's opposition to DLA's motion for summary judgment, Supreme contended that "[e]ach of the 38 appeals [of Supreme's affirmative claims] involves its own unique set of facts, circumstances and events that occurred at various times throughout Supreme's eight years of performance, and are unrelated to transactional facts germane to the POT appeal" (app. opp'n at 19). Given these differences, Supreme contended that "the Board may well find that DLA's conduct in connection with Supreme's other claims constituted a waiver of Supreme's first material breach for purposes of one or more of those appeals" (*id.* at 20). Supreme spent the next 23 pages of its brief discussing the discrete appeals and suggesting reasons why the Board might rule that DLA had waived its prior material breach defense in those appeals. Typically, the contention was that DLA ordered the work after knowing about some aspects of Supreme's fraud (*e.g.*, *id.* at 22-25), which is the same argument Supreme made in the POT appeals.

In its supplemental brief filed after the Federal Circuit's decision, Supreme recognizes that this argument is no longer viable. Supreme acknowledges that "one could read the Federal Circuit decision as holding that DLA's knowledge of Supreme's conduct prior to the plea is effectively irrelevant to the waiver inquiry . . . ." (app. supp. opp'n at 2). Indeed, that is exactly how we read the Federal Circuit's decision.

7

DOCUMENT FOR PUBLIC RELEASE.
**The decision issued on the date below is subject to an ASBCA Protective Order.**
**This version has been approved for public release.**

Supreme continues to make a second argument that it contends is not affected by the Federal Circuit's ruling (app. supp. opp'n at 26).  Supreme contends that it is "well-settled" that different aspects of the work under a contract can be divisible or severable such that a material breach of one portion does not necessarily "taint" other parts of the contract (app. opp'n at 44).  Supreme cites, for example, *Bulova Tech. Ordn. Sys. LLC*, ASBCA No. 57406, 14-1 BCA ¶ 35,521 at 174,098-99, a default termination of a foreign military sales contract in which the Board held that sales of various weapons to a foreign country could be treated as severable because the weapons were purchased from vendors in different countries and were otherwise unrelated.

Supreme correctly states that the SPV contract did not require Supreme to deliver to the FOBs when it was awarded (app. opp'n at 45).  Rather, it required Supreme to deliver only to four large bases.  *Supreme I*, 20-1 BCA ¶ 37,618 at 182,600 (finding 23).  In Supreme's view, because the FOB deliveries were a discrete add-on to the contract, and because the fraud related to that work, the Board should sever this work from the rest of the contract and allow Supreme to pursue its claims for work not tainted by fraud (app. opp'n at 45-46).

While the Board will not rule on Supreme's factual contentions, we observe that if Supreme is contending that the fraud occurred only on the FOB deliveries, there is no support for this in the agreed statement of facts attached to the guilty plea agreement (ASBCA No. 57884, R4, tab 633 at 14-16).  Supreme did not start FOB deliveries until November 2005 at the earliest but the agreed statement of facts states that the bottled water fraud started in July 2005 (*id.* at 16; *Supreme I*, 20-1 BCA ¶ 37,618 at 182,601 (finding 33).[5]

In any event, the Board does not find any support for treating fraud as severable from contract work not tainted by fraud.  *See*, *e.g.*, *Joseph Morton Co., Inc. v. United States*, 757 F.2d 1273, 1277-78 (Fed. Cir. 1985) (rejecting contractor's proposed test that would balance a single change order tainted by fraud against hundreds of changes performed without fraud).  In fact, it is possible for the breach of contract action and the fraud to involve completely different aspects of the contract work.

---

[5] The fraudulent water price listed in the guilty plea agreement was $6.45 per case (ASBCA No. 57884, R4, tab 633 at 16).  DLA traces that price back to a different contract, and a September 26, 2004 quote from Supreme as subcontractor to Public Warehousing Company (PWC), a prime contractor (ASBCA No. 57884, R4, tab 715 at 2).  On November 30, 2004, DLA incorporated the $6.45 price into its contract with PWC (ASBCA No. 57884, R4, tab 434 at 2).  This was more than six months before the award of the SPV contract to Supreme and roughly one year before Supreme began making FOB deliveries.  *Supreme I*, 20-1 BCA ¶ 37,618 at 182,600-01 (findings 22, 33).

**DOCUMENT FOR PUBLIC RELEASE.**
**The decision issued on the date below is subject to an ASBCA Protective Order.**
**This version has been approved for public release.**

For example, in *Laguna*, the contract claim arose from 14 unpaid vouchers on 11 task orders. While it was clear that the contractor had accepted kickbacks on several of the task orders, the government could not show that the contractor had accepted kickbacks on all 11 task orders. The Board held that this was not necessary because any degree of fraud in the submission of vouchers is a material breach of the contract. By accepting kickbacks, the contractor had committed a prior material breach that excused the government's obligation to pay, even though some of the vouchers at issue were on task orders that were not tainted by the kickbacks. *Laguna Constr. Co.*, ASBCA No. 58324, 14-1 BCA ¶ 35,748 at 174,948-49; *Laguna*, 828 F.3d at 1367, 1372.

Similarly, in *Long Island Sav. Bank, FSB v. United States*, 503 F.3d 1234, 1241 (Fed. Cir. 2007) the litigation at the Court of Federal Claims arose from the enactment of the Financial Institutions Reform, Recovery and Enforcement Act of 1989 (FIRREA), which restricted the ability of banks to count supervisory goodwill and capital credit toward compliance with their tangible capital requirements. Generally, these "Winstar" cases involved an allegation by a bank that the government had promised the supervisory goodwill to the buyers of the bank when they entered into merger transactions. The prior material breach ruling (which nullified a $435 million judgment in the bank's favor) arose from undisclosed compensation that the bank president received from a law firm that represented the bank. The undisclosed compensation had no relationship whatsoever to the congressional enactment of FIRREA. *Id.* at 1239-41, 1243, 1251-52.

Accordingly, the Board agrees with DLA that Supreme's fraud is not severable from the remainder of its work on the SPV contract, even if some of that work was not directly tainted by the fraud. The Board holds that Supreme's prior material breach through its fraud relieves DLA of its obligation to pay any of Supreme's claims for work performed on the Afghanistan SPV contract during the original contract term, that is, until December 12, 2012.

**DOCUMENT FOR PUBLIC RELEASE.**
**The decision issued on the date below is subject to an ASBCA Protective Order.**
**This version has been approved for public release.**

B. <u>The Panama SPV Contract</u>

DLA has had the opportunity to justify its withholding on the Panama contract in the three briefs it has submitted in connection with the pending cross motions. DLA has not done so. The Board gathers from the CO's reference to a debt on another contract that DLA withheld the $5,415,718.79 in case the amounts it had withheld on the Afghanistan SPV contract were not enough to cover Supreme's debt to the government. The government has a right to offset debts on one contract against amounts owed on another contract. *Agility Public Warehousing Co., K.S.C.P. v. United States*, 969 F.3d 1355, 1365-66 (Fed. Cir. 2020). However, based on the stipulated judgment in which the parties agreed that DLA had over-withheld by $142,977,654.25, there is no longer any reason for a withholding on a separate contract.

The Board also recognizes that DLA's answer could be read as contending that DLA's breach of the Afghanistan SPV contract somehow carries over to other contracts Supreme had with the government and allows the government to decline to pay on the Panama contract even if the contractor did not breach that contract. DLA has not cited any precedent in support of such a contention. The general rule is that when a party breaches a contract, only the exchange of performances on that contract is affected by the breach; duties under separate contracts are not affected. *Nat'l Farmers Org. v. Bartlett & Co., Grain*, 560 F.2d 1350, 1357 (8th Cir. 1977) (citing 3A CORBIN ON CONTRACTS § 696 (1960) for the proposition that "[i]t is well established that the breach of one contract does not justify the aggrieved party in refusing to perform another separate and distinct contract."); RESTATEMENT (SECOND) OF CONTRACTS § 237 cmt. E (1981); 13 WILLISTON ON CONTRACTS § 39:2 (4th ed.) ("A party to a contract is not excused for nonperformance because the other party to the contract has breached a separate contract between them . . . .")

Accordingly, Supreme is entitled to summary judgment on the Panama contract, ASBCA No. 61123.

C. <u>The Bridge Contract</u>

The rule discussed above in the Panama section could be summarized as the "separate contracts are separate contracts" rule. However, in *Supreme I*, under unique facts, the Board made an exception to this rule.

In *Supreme I*, the Board found that the contract in place from December 13, 2012, to December 12, 2013, was a bridge contract, not an extension of the original contract. The Board described the close association between the original contract and the bridge contract, finding among other things, that the bridge contract had the same

10

**DOCUMENT FOR PUBLIC RELEASE.**
**The decision issued on the date below is subject to an ASBCA Protective Order.**
**This version has been approved for public release.**

parties, used the same contract number, required Supreme to do the same work, and incorporated all terms, conditions, and modifications of the original contract. *Supreme I*, 20-1 BCA ¶ 37,618 at 182,629-30. On appeal, the government did not dispute that Supreme performed the final year under a bridge contract. *Supreme III*, 54 F.4th at 1370.

One of the shortcomings of Supreme's presentation was that it did not present any proof of its POT costs for the period from September 2010 to December 2013. *Supreme I*, 20-1 BCA ¶ 37,618 at 182,618 (finding 190). Thus, in addition to the close connections between the two contracts described in the previous paragraph, Supreme treated the contracts as so closely connected or intertwined for POT purposes that it needed not present any proof of the costs for which it was seeking to be paid. The Board held that, under these unique circumstances, DLA could apply its prior material breach defense to the bridge contract. *Id.* at 182,629-30. The Federal Circuit affirmed, holding that "[w]e agree that we should not allow Supreme to treat the bridge contract as separate only when it attempts to evade the government's affirmative defenses." *Supreme III*, 54 F.4th at 1370.

The Board made the above ruling after a month-long hearing and after the record had closed. Thus, it was a finding based on the Board's examination of the entire record. By contrast, litigation of the non-POT appeals is still in the discovery stage. Supreme may still be in a position to prove its costs during the bridge contract. Accordingly, Supreme may be able to avoid "treat[ing] the bridge contract as separate only when it attempts to evade the government's affirmative defense." *Supreme III*, 54 F.4th at 1370.

The Board denies DLA's motion for summary judgment for work performed during the bridge contract.

II.     Supreme's Quantum Meruit Theory

Supreme has pled a quantum meruit theory in six appeals[6] . It has also filed a motion seeking leave to amend its complaints to add a quantum meruit theory in a further 26 appeals.[7]

---

[6] ASBCA Nos. 59615, 59681, 59683, 60365, 61293, and 61294 (app. opp'n at 52 (citing ASGIMF ¶¶ 103, 118, 128, 152, and 183)).

[7] ASBCA Nos. 58958, 58959, 58982, 59083, 59164, 59165, 59391, 59392, 59419, 59420, 59618, 59619, 59653, 59675, 59676, 59682, 59830, 59863, 59867, 59872, 59879, 60832, 61069, 61123, 61319 and 61837 (app. mot. to amend at 1, n.1).

**DOCUMENT FOR PUBLIC RELEASE.**
**The decision issued on the date below is subject to an ASBCA Protective Order.**
**This version has been approved for public release.**

Supreme's theory is straightforward: it contends that it did the work and, therefore, it should be paid. Under this argument, the prior material breach doctrine is just a minor nuisance that can be overcome by adding a few paragraphs to its complaints. Supreme cites the Federal Circuit's decision in *United States v. Amdahl Corp.*, 786 F.2d 387, 392-93 (Fed. Cir. 1986). In *Amdahl*, after an agency exceeded its authority in awarding a contract, the Court held that the contract was void but the contractor, who was not the cause of the violation of law, could recover under a quantum meruit theory.

The Board rejects Supreme's quantum meruit argument. First, the "Board generally does not have jurisdiction to grant relief to a party who sues to recover compensation on a quantum meruit basis, which is an action on a contract implied in law." *Protec GmbH*, ASBCA No. 61161, *et al.*, 18-1 BCA ¶ 37,064 at 180,420 (quoting *Cousins Contracting, Inc.*, ASBCA No. 50382, 97-1 BCA ¶ 28,906 at 144,111 and citing *Int'l Data Prods. Corp. v. United States*, 492 F.3d 1317, 1325-26 (Fed. Cir. 2007)). There is an exception to that general rule when the government seeks to avoid payment on the grounds that a contract is illegal or void ab initio. *Id.*

The Board has already ruled in *Supreme I* , 20-1 BCA ¶ 37,618 at 182,636-37, that the contract was not void ab initio. Further, DLA is not trying to avoid payment based on an assertion that the contract was illegal.

Second, the Federal Circuit has rejected a quantum meruit claim in a case with comparable facts. In *Veridyne Corp. v. United States*, 758 F.3d 1371 (2014), a contractor fraudulently obtained a contract extension by deliberately understating the value of the work to be performed. *Id.* at 1374-75. After the agency learned of the fraud and issued a stop work order, the contractor submitted a claim for eight unpaid invoices. *Id.* at 1375. The Court of Federal Claims ruled that the contractor had forfeited its direct contract claims under the Special Plea in Fraud statute, 28 U.S.C. § 2514, but held that the contractor could recover on a quantum meruit basis for more than $1 million of work performed before the agency issued the stop work order. *Id.* at 1376.

The Federal Circuit reversed the trial court's quantum meruit ruling. The Court held that when a cause of action based on the express contract has been forfeited due to fraud, an alternative theory based on quantum meruit is also unenforceable. *Veridyne*, 758 F.3d at 1377 (citing *Mervin Cont. Corp. v. United States*, 94 Ct. Cl. 81, 86-87 (1941)). The Federal Circuit rejected the contractor's reliance on *Amdahl*, explaining that *Amdahl* protects the "innocent contractor," not those who have committed fraud. *Id.* at 1378 (citing *Amdahl*, 786 F.2d at 392-93, 395)). The Board and courts have reached comparable results in several other cases. *Rankin v. United States*, 98 Ct. Cl. 357, 364-67 (1943) (although government was charged a market rate for leased space, the conflict of interest of a government employee involved in the award meant that

**DOCUMENT FOR PUBLIC RELEASE.**
**The decision issued on the date below is subject to an ASBCA Protective Order.**
**This version has been approved for public release.**

plaintiff could not recover on either an express or an implied contract theory); *Dongbuk R&U Eng'g Co.* , ASBCA No. 58300, 13 BCA ¶ 35,389 at 173,639 ("The fact that the government received some benefit does not relieve Dongbuk from the consequences of its fraud. When one has been guilty of fraud, one cannot recover in any form of action.") (citing *Atlantic Contracting Co. v. United States*, 57 Ct. Cl. 185, 197 (1922)); *Atlantic Contracting*, 57 Ct. Cl. At 196 (calling it a "preposterous proposition" that the plaintiff should recover under quantum meruit after convictions for defrauding and embezzling from the government.).

The Board sees no logical or just reason why the *Veridyne* contractor's quantum meruit claim should fail but Supreme's should survive. While the Special Plea in Fraud statute is not applicable at the Board, the Board holds that the Federal Circuit's ruling in *Veridyne* provides compelling authority for these appeals. Both *Veridyne* and *Supreme* involve fraud. While the former involved the Court of Federal Claims' own determination of fraud, in *Supreme* the government obtained a guilty plea in a district where it would have had to prove its case beyond a reasonable doubt, a higher standard than required by the Special Plea in Fraud, which is clear and convincing evidence. *Kellogg Brown & Root Servs., Inc. v. United States*, 728 F.3d 1348, 1365 (Fed. Cir. 2013). The district court guilty plea, therefore, is at least as meaningful as a finding of civil fraud at the Court of Federal Claims.

Moreover, while the *Veridyne* analysis was based in large part on the Special Plea statute, the *Veridyne* Court observed that *Amdahl* did not extend *quantum meruit* recovery to cases involving "fraud and the like," *see* 758 F.3d at 1377 (quoting *Amdahl*, 786 F.2d at 395 n.8)). It is impossible to read *Veridyne* and *Amdahl* and conclude that the policy and equity concerns that drove those decisions would support compensation of Supreme as if it were an "innocent contractor." It is also difficult to read *Laguna* and conclude that the contractor could have recovered if it had merely added a quantum meruit count to its complaint.

Accordingly, the Board declines to decimate the prior material breach doctrine by permitting recovery under quantum meruit. The Board adopts the Federal Circuit's reasoning in *Veridyne* and holds that Supreme may not recover under quantum meruit.

Under Board Rule 6(d), the Board may grant leave to amend a pleading "upon conditions fair to both parties." For guidance, the Board looks to decisions interpreting Fed. R. Civ. Proc. 15, and one basis for denying an amendment under that Rule is if the amendment would be futile. *Public Warehousing Co. K.S.C.*, ASBCA No. 57510, 17-1 BCA ¶ 36,700 at 178,720; *Cultor Corp. v. A.E. Staley Mfg. Co.*, 224 F.3d 1328, 1333 (Fed. Cir. 2000). The Board holds that because Supreme cannot recover under its quantum meruit theory, the proposed amendments would be futile. *See also Relyant, LLC*, ASBCA No. 59809, 18-1 BCA ¶ 37,085 at 180,534 (denying request to amend complaint to include a contract implied in law).

**DOCUMENT FOR PUBLIC RELEASE.**
**The decision issued on the date below is subject to an ASBCA Protective Order.**
**This version has been approved for public release.**

Accordingly, the Board denies Supreme leave to amend its complaints to add a quantum meruit theory.

### III. DLA's AFFIRMATIVE CLAIMS SURVIVE

Supreme contends that if its claims are dismissed, DLA's claims must be dismissed as well. Supreme contends that DLA has elected "to treat the contracts as void," which means that "the contracts are unenforceable for both parties." (App. supp. opp'n at 34 (emphasis omitted)). However, in making these contentions, Supreme is mistaken about the prior rulings of the Board and the Federal Circuit, and the application of the prior material breach doctrine.

In *Supreme I*, the Board analyzed DLA's prior material breach contentions in light of the Federal Circuit's decision in *Laguna*, as described above. However, the Board also analyzed a second line of cases advanced by Supreme in which the prior material breach occurred during performance and the non-breaching party had to elect whether it would continue to perform, in which case it risked waiving the right to assert the prior material breach. *Supreme I*, 20-1 BCA ¶ 37,618 at 182,627-28 (citing, *inter alia*, *Barron Bancshares, Inc. v. United States*, 366 F.3d 1360, 1383 (Fed. Cir. 2004) and *Long Island*, 503 F.3d at 1252). The Board rejected Supreme's contentions, holding that DLA did not expressly or impliedly waive its right to assert the breach. *Id.* at 182,628.

The Board also rejected Supreme's arguments based on another case, *Northern Helex Co. v. United States*, 455 F.2d 546, 551-52 (Ct. Cl. 1972) in which the Court of Claims discussed a variation on the waiver rule that examines whether it was commercially reasonable for the non-breaching party to continue performance. The Board rejected this argument as well because continuing with Supreme was DLA's only practicable choice at the time. *Supreme I*, 20-1 BCA ¶ 37,618 at 182,629.

At the Federal Circuit, Supreme again contended that DLA had waived its prior material breach defense when it continued to perform after it learned of the fraud allegations in 2009 and it again cited the *Barron Bancshares* line of cases and *Northern Helex* (corrected brief of appellant at 34-60, *Supreme III*, 54 F.4th 1362 (2021-1965)). As already described, the Federal Circuit rejected all of Supreme's arguments, holding that DLA did not have a known right to invoke the prior material breach doctrine until after Supreme pled guilty, which was after contract performance concluded. *Supreme III*, 54 F.4th at 1368.

Based on the rulings in Supreme I and Supreme III, the cases requiring the non-breaching party to elect its remedy during performance have little relevance here because DLA did not have a known right to assert prior material breach until after the contract work had ended and Supreme pled guilty. Nevertheless, in its cross motion,

14

**DOCUMENT FOR PUBLIC RELEASE.**
**The decision issued on the date below is subject to an ASBCA Protective Order.**
**This version has been approved for public release.**

Supreme continues to press a version of the arguments already rejected by the Board and Federal Circuit and continues to rely on the same or similar cases. For example, Supreme repeatedly cites from a section of *Northern Helex* in which the Court of Claims discussed the general rule that when a party breaches during performance the non-breaching party must elect whether to claim total breach, or to continue performing and risk waiving that right. *Northern Helex*, 455 F.2d at 551-54. Not only did the Court of Claims reject application of that rule in *Northern Helex*, *id.* at 553-54, but both we and the Federal Circuit have rejected it with respect to Supreme, as already stated.

One of the flaws in Supreme's argument, is that it keeps describing the contract as "void." It goes as far as stating in its motion to amend that the Federal Circuit held that DLA "can treat the contracts as void for Premium Outbound Transportation purposes" (app. mot. to amend at 1). But the Federal Circuit never used the word "void." The Board did consider DLA's contention that the contract was void ab initio due to Supreme's fraud, but we *rejected* this contention as Supreme urged us to. *Supreme I*, 20-1 BCA ¶ 37,618 at 182,636-37. Neither party appealed that determination, and it is now final and binding.

Even if we had not made that ruling , Supreme would be mistaken when it describes the contract as "void." In *Long Island*, the Federal Circuit first considered whether the contract was void ab initio due to false certifications, concluding that it was. 503 F.3d at 1251. But, in considering the government's alternate argument of prior material breach, the Court made it clear from the beginning of this section of the opinion that the prior material breach doctrine applied "[e]ven if the contract were not void . . . ." *Id.*

In both *Long Island*, 503 F.3d at 1251, and another prior material breach case, *Christopher Village, L.P. v. United States*, 360 F.3d 1319, 1334 (Fed. Cir. 2004), the Federal Circuit relied upon Restatement (Second) of Contracts § 237. This section speaks of the contract not as being void, but rather states that a material breach by one party "discharges" the other party's duty to perform. *Id.* at § 237 cmt. a.; *accord Long Island*, 503 F.3d at 1252 (applying Restatement § 242 for determining when an uncured material breach discharges the other party's duty to perform).

The Restatement illustrates how the doctrine functions at its most basic level. An owner contracts with a builder to construct a building. The contract provides for monthly payments. During performance, the owner stops making payments without justification. Unless the owner quickly resumes making payments, the duties of the builder to continue performance are discharged and it has a cause of action against the owner for total breach. RESTATEMENT (SECOND) OF CONTRACTS § 237, cmt. a, illustrations 1 and 2.

**DOCUMENT FOR PUBLIC RELEASE.**
**The decision issued on the date below is subject to an ASBCA Protective Order.**
**This version has been approved for public release.**

Now we add one fact. At the time the owner stopped making payments, the builder already had a claim against the owner for $1 million due to extra work performed earlier in the project. According to Supreme's logic, when the builder stops work due to the owner's material breach through nonpayment, the contract is void, which means that neither party can enforce the contract. This, in turn, would mean that the builder must relinquish its pending $1 million claim. The Board sees no support for this contention.

Even the inapplicable cases cited by Supreme that require the non-breaching party to make an election of remedies during performance make it clear that the election doctrine is concerned with damages moving forward, not those already incurred. In *Northern Helex*, the Court of Claims stated that as "a general proposition, one side cannot continue after a material breach by the other (such as failure to pay), act as if the contract remains fully in force (although stopping performance would be fair and convenient), run up damages, and then go suddenly to court." 455 F.2d at 551. *Northern Helex*, at first blush, seemed to be a textbook example of these concerns, because the contractor continued to deliver helium to the government even after the government's failure to pay over an extended period of time, which seemingly ran up the contractor's damages. *Id.* at 549-50. The Court of Claims rejected the government's waiver argument, however, because the unique nature of the plaintiff's business required it to continue producing helium. *Id.* at 551; *see Old Stone Corp. v. United States*, 450 F.3d 1360, 1373 (Fed. Cir. 2006) (explaining that the "election doctrine is designed to avoid the very kind of moral hazard that would result here if the thrift could postpone repudiation of the contract for several years, bet that it could make the thrift profitable, but secure restitution if the thrift failed.").

Accordingly, the Board holds that when DLA acquired a known right in December 2014 upon Supreme's guilty plea, DLA's assertion of the prior material breach defense did not result in the waiver or forfeiture of DLA claims that arose prior to December 2014.

16

**DOCUMENT FOR PUBLIC RELEASE.**
**The decision issued on the date below is subject to an ASBCA Protective Order.**
**This version has been approved for public release.**

CONCLUSION

The Board grants DLA's motion for summary judgment with respect to Supreme's appeals that seek costs incurred prior to December 13, 2012, except for ASBCA No. 61123, the Panama contract, for which the Board grants Supreme summary judgment and except for No. 59420 for which the Board defers its ruling.[8] Supreme's motion to amend is denied. Supreme's cross-motion for summary judgment and motion to dismiss are denied other than with respect to the Panama contract.

Dated: November 8, 2023

MICHAEL N. O'CONNELL
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

I concur

RICHARD SHACKELFORD
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I concur

J. REID PROUTY
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

---

[8] The Board grants DLA summary judgment on ASBCA Nos. 58958, 58959, 58982, 59038, 59164, 59165, 59391, 59392, 59393, 59418, 59481, 59653, 59681, 59682, 60017, 60724, 61293, and 61837. The Board grants DLA partial summary judgment for costs incurred up to December 12, 2012 on ASBCA Nos. 59615, 59675, 60365, 60832, and 61294.

**DOCUMENT FOR PUBLIC RELEASE.**
**The decision issued on the date below is subject to an ASBCA Protective Order.**
**This version has been approved for public release.**

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA Nos. 58958, 58959, 58982, 59038, 59164, 59165, 59391, 59392, 59393, 59418, 59419, 59420, 59481, 59615, 59618, 59619, 59653, 59675, 59676, 59681, 59682, 59683, 59830, 59863, 59867, 59872, 59879, 60017, 60024, 60250, 60309, 60365, 60724, 60832, 61069, 61123, 61293, 61294, 61319, 61370, 61837, Appeals of Supreme Foodservice GmbH, rendered in conformance with the Board's Charter.

Dated: November 9, 2023

PAULLA K. GATES-LEWIS
Recorder, Armed Services
Board of Contract Appeals